JOSEPH MORSE *v.* SAMUEL RANNO AND WALTER ROBBINS.

*Dedication. Adverse possession. Highway. Common.*

The mere act of leaving land, between the owner's house or store and the highway, unenclosed, for the purpose of making access to such house or store more convenient, does not of itself constitute a dedication of the land to the public use.

The omission to fence land adjoining the highway is no proof of an intent to dedicate it to the public.

But if the public appropriate it to their use, and continue to use it for the space of fifteen years or more, *for the ordinary purposes of a highway,* then they acquire the *right* so to use it.

When a highway is thus acquired by occupation, its extent must be determined by the extent of the actual possession and use.

Such possession and use by the public for a less period than fifteen years may be sufficient to show a dedication, where it is accompanied by other acts or circumstances proving an *intent* on the part of a donor or grantor to make such dedication.

TRESPASS for cutting down and removing a fence built by the plaintiff. Plea, the general issue, and notice; trial by jury at the December Term, 1859,— PIERPOINT, J., presiding.

The plaintiff's evidence tended to show that the defendants cut

Morse *v.* Ranno et al.

down and removed a fence built by him, west of his house, on premises which he owned and occupied; that this fence was on or near the east line of the highway leading from Salisbury to Brandon, and on or near the south line of the highway leading from the dwelling house of Charles Church to Leicester meeting house. The deed to the plaintiff of the premises occupied by. him was dated in 1858, and therein the land conveyed was described as bounded on the west ·by the east line of the highway.

The defendants gave evidence that the plaintiff erected said fence a short time previous to its removal, and that they removed it in pursuance of the direction of the selectmen of Leicester, (the defendant Ranno being one of the selectmen) as being in the highway and an encroachment upon the public travel. The defendants' evidence also tended to show that said highway through Leicester, leading from Salisbury to Brandon, was surveyed in 1797, and soon afterwards fenced and worked, and had been used and traveled as such ever since; that it was originally laid out six rods wide, but had not for many years been occupied more than three or four rods wide, and that the fences on both sides of it had been brought into the highway; that the highway running east and west had been used for more than thirty years, as traveled previous to and at the time the plaintiff erected the fence in question. The defendants further proved that the ground in front of the plaintiff's house from a point opposite his barn to the east and west road, thence east on the south side of said road to a point nearly opposite the northwest corner of the house, had been open and unenclosed for forty or fifty years prior to the plaintiff's building said fence; and gave evidence tending to show that while John Smith owned the premises he kept a store in said house and used said ground as a common, and after he sold to Isaac Morse the house was used as a dwelling house, and has ever since been so used, and the grounds have remained open and unenclosed until the plaintiff made the fence in question. The defendants also gave evidence tending to show that the fence erected by the plaintiff interfered with the accustomed travel, which had always been in the same place, on the north and south road; that the travel from the east, around the corner to the south, passed directly over where the fence was built, and that it

was only about twelve feet from said fence across to a ledge marked on a plan introduced in evidence.

The plaintiff introduced evidence tending to show that the ground covered and enclosed by said fence was within the limits of his deed; that said fence was neither within the limits of the highway as originally surveyed, nor as actually traveled; that said highway had been gradually working east, and had not been, during the fifteen years before the removal of the fence, so far to the east, opposite said fence, as it then was; that the land in front of his house and between that and the highway, though unenclosed until a recent period, had never been in any way, by him or his grantors, relinquished or dedicated to the public, or occupied by the public otherwise than for the purpose of entering or departing from his house, or store, when used as such.

The defendants requested the court to charge the jury as follows: first, that if they found that the highway north and south was opened and worked upon the line of the original survey, that would determine the location of the highway, and that the public would have the right to the highway so surveyed, worked and occupied; second, that the fact that the ground where the fence was put by the plaintiff and removed by the defendants, under the order of the selectmen, having remained open to the public for fifty years, constituted a dedication to the public, and that the plaintiff had no right to enclose it against the public; third, that it was not material that the part of the highway claimed as such should be actually used at all times for the travel of teams and carriages, but if occasionally used, and if it was. convenient to the public travel, the plaintiff could not lawfully enclose it; fourth, that if the jury should find that the highway had been for such long period of time occupied, used and traveled, substantially in the same place where it was traveled when the plaintiff erected his fence, it was immaterial where the original survey was made; and that the public would have a right to said highway as located and used; fifth, that the selectmen having, upon examination, determined that the fence erected by the plaintiff was an encroachment and nuisance upon the highway, and having acted in good faith, it was a matter within their jurisdiction, and at least *prima facie* evidence of the fact; sixth, that the plaintiff's

title confined him to the east line of the highway, and if the *locus in quo* was not included in the conveyance, then the plaintiff could not possess himself of this land, under the circumstances, against the public; seventh, that the plaintiff's deed, in 1858, confined him to the east line of the highway, and that the highway referred to in said deed must be regarded as the highway as then used.

The court declined to charge as requested, but charged the jury that if they found that the place where the plaintiff erected his fence, and from which the defendants removed it, had never been before enclosed since the highway was laid out and opened, and was embraced within the limits of the highway as originally surveyed and opened, then the plaintiff had no right to erect the fence, and could not recover in this suit; that if they found that the plaintiff, or those under whom he claimed, had thrown the land in front of the dwelling house open to the public, and had dedicated it to the use of the public, and it had so remained until the time the plaintiff erected his fence, then the plaintiff could not recover; but that the mere act of leaving the space in front of his house and between that and the highway, open, as unenclosed ground, without any other act tending to show a dedication of it to the public use, would not of itself constitute a dedication of it to the public use, and deprive the plaintiff of the right to enclose it; but that if the jury should find that the public had appropriated it, or any part of it, to their use for a highway, and had continued to use it as such for a space of fifteen years or more, then, to the *extent* to which they had so used it, the public would have acquired the *right* to use it, and the plaintiff would have no right to fence or enclose it, so as to prevent or interfere with the use of the same by the public, as they had been accustomed to use it during such period of time; that to vest this right in the public, on the ground of use alone, the jury must find that the public had, during such period, continued to use it for the ordinary purposes of a highway; that the fact that a traveler had occasionally passed across the place in question, the travel being generally off from it, would not be sufficient; that if the public had acquired a right by fifteen years use of the premises, their right was limited to the extent of their use

and that if the jury found that the fence which the defendants had removed was not within the limits of the highway as originally surveyed, and was not within the traveled path of the highway, nor so near it as to prevent or interfere with the use of it as the public had been accustomed to use it for the fifteen years preceding the erection of the fence, then the plaintiff was entitled to recover; but that if they found that the fence was put within the limits of the highway as originally surveyed, or within the traveled path of the highway as it had been used for the period of fifteen years preceding. or so near as to interfere with the use of said highway as the public had been accustomed to use it during said period, then the defendants were entitled to a verdict.

To the foregoing charge, and to the refusal to charge as requested, the defendants excepted.

*Briggs & Nicholson,* for the defendants.

1. Upon the question of dedication the instructions of the court were too narrow. It was a conceded fact that the ground in controversy had been used as a common for forty or fifty years, in which uses the plaintiff and his grantors had acquiesced. This constitutes a dedication, and no other *act* of dedication was necessary.

It is not necessary that the public should *use* the way or common for fifteen years to acquire a right; *State* v. *Wilkinson*, 2 Vt. 480; *Rughby Charity* v. *Merryweather*, cited in note, 11 East. 375 ; 5 Taunt. 126.

2. The proposition embraced in the third request is self-evident. It is this : that a right may be acquired by an occasional use of the way, it being convenient to the public and long continued, and that it is not necessary that it should have been used at all times for travel of teams. But the court say, the fact that a traveler had *occasionally* passed across the place in question, the travel being generally off from it, would not be sufficient. This is a hypothesis that the case does not call for, and was no answer to our request.

3. The charge, under the 4th request, limits the right of the public to the original survey of the highway, whereas the mere occupation of it by the public would restrict the right.

Morse *v.* Ranno et al.

4. The court should have noticed the 6th request. The descrip-tion in the deed to the plaintiff dated February 15, 1858, refers to the highway as it then existed. The plaintiff's title was lim-ited to the highway, and his right should be restricted accordingly.

The charge of the court confines the right of way to the trav-eled part of the highway, unless an actual survey can be shown. This we think is error. A right of way should carry with it sufficient breadth for all the *contingencies* of travel, especially at points surrounded by ledges and pitfalls.

*Linsley & Prout*, and *E. J. Phelps*, for the plaintiff, contended that the proposition that the land having remained open for fifty years, of itself amounted to a dedication of it to the public, was erroneous; that the intention of the owner to dedicate it must appear, as well as an acceptance of it by the public; *Page* v. *Weathersfield*, 13 Vt. 424; *Blodgett* v. *Royalton*, 14 Vt. 288; *State* v. *Trask*, 6 Vt. 355; *Commonwealth* v. *Kelly*, Liv. Law Mag. March, 1853, p. 169.

ALDIS, J. This case was submitted upon the briefs of the counsel, and we notice therefore only the points made by the excepting party.

I. It is claimed that the charge of the court was erroneous upon the subject of dedication, in this, that, as it was a conceded fact that the ground in controversy had been used as a common for forty or fifty years, no other act of dedication was necessary.

We think what is here claimed as a conceded fact does not appear to have been either conceded or proved, or that there was even any evidence tending to show that it had been used as a common by the public.

It was conceded that the land had never been enclosed by a fence, but that clearly was no evidence that it had been used by the public as a common. Since 1839, the owner of lands adjoin-ing the highway has not been required by law to fence improved lands upon the line of the highway. The omission to so fence them is no proof whatever of an intent to dedicate them to the public, and the instruction of the court upon this point was entirely right. Nothing formerly was more common than for

farmers, and even for those residing in villages, to leave vacant and unfenced yards in front of their houses. It would be against the common sense and universal experience of the community to infer an intention to dedicate such grounds to the public. All that is said in the exceptions as to its being used as a common is, " while John Smith owned the premises he kept a store in the house and used said ground as a common." We think this language cannot fairly be held to mean anything more than that he used the land for people to drive over and occupy for the purpose of coming to his store to trade. The expression is that he used the ground as a common, not that the public used it. *How* he used it, or what acts he or others actually did on the land in so using it, are not specified. In the absence of more specific proof we must consider that he used it as a common only for his private benefit, viz : that he left it open and not fenced from the road so that his customers might have more ready and convenient access to the store. This, too, would not be the least proof of a dedication. And this was all the evidence we can find that tended in that direction. There was, therefore, no evidence of any positive intent or act of the plaintiff or his grantors to dedicate the land to the public, and the right of the public must rest, therefore, upon mere use or possession, unaccompanied by other acts or circumstances.

It is claimed that a dedication may be shown by a possession by the public for less than fifteen years. This is unquestionably true when the enjoyment by the public is accompanied by other acts and circumstances showing an intent on the part of a donor or grantor to make a dedication. Thus, where the owner of land opens a street through his premises, sells building lots and induces others to buy and build on the street, a much shorter possession than fifteen years would suffice to establish the dedication. In such case it would be fraudulent in the owner, after having induced others to act upon the faith of the street's being appropriated to public use, then to attempt to defeat the public use. So where papers, writings, or deeds defectively executed evince the intent to make a dedication of land to the public, a corresponding possession of less than fifteen years may sometimes suffice. Cases of this kind go much upon the ground of proof of

an actual *intent* to make the dedication, and that upon the faith of the supposed dedication the public or individuals have relied, and made investments, or erected buildings whose values would be impaired by the withdrawal of the land from public use.

But in this case no act or intent of the plaintiff or his grantors is shown; there is nothing but use by the public as a highway for travel and mere silent acquiescence, or, rather, mere omission to resist such use by the plaintiff. The right of the public, there-fore, stands upon the basis of mere enjoyment, unaccompanied by other acts or circumstances; in short, upon adverse possession, and must be continuous and for that period of time (fifteen years) which ripens possession into title. The charge of the court placed the case on this ground, and we think was entirely correct.

Where a highway is thus acquired by occupation, the extent of the acquisition, the width of the road, must be determined by the extent of the actual occupation and use. There can be no constructive possession beyond the limits which are defined by the user upon the land, or by other marks or boundaries marking the extent of the claim. In this case there does not appear to have been any evidence of claim, or any showing of marks or bounds to extend the right of the town beyond the line of actual travel.

Judgment affirmed.