## Edward D. Plimpton *v.* Waldo Converse.

*Right of Way. Adverse Possession. Prescription. Presumption.*

Whenever the owner of land throws it open to the public to pass and repass in connection with the use to which he appropriates it, the mere use of the land by an adjoining proprietor for a way to his own premises, though that use is uninterrupted, open and notorious, will be presumed to be with the permission of the proprietor, and will not be presumed to be adverse to the owner, or under a claim of right by the adjoining proprietor; that the party claiming to establish a right of way in such a case must show some act appropriating the way peculiarly to himself, more pronounced and more clearly indicative of a claim of right than the open and notorious use of the way by himself.

The fact that the defendant threw his land open to the public for the use of persons having business at his carriage shop and saws, gave an implied invitation and permission to every one, who had occasion so to do, to pass over the lot freely, and the use thereof, by the plaintiff and his customers, should be presumed to have been *de gratia*, or with the implied permission of the defendant, and no presumption of the assertion of an adverse right would arise therefrom.

A way must start from a fixed point and lie along a definite course to another fixed point; and to acquire a right of way by adverse use, the plaintiff must have used the same, within its definite limits, uninterruptedly, openly, notoriously and *adversely* to the defendant's rights and use, for fifteen years.

ACTION ON THE CASE for obstructing the plaintiff's way. Plea, general issue and trial by jury, Windham county, September term, 1870, BARRETT, J., presiding.

The plaintiff is and has been for several years the occupant and part owner of a grist-mill, situated in the village of Wardsboro, and the defendant owns a shop, used as a wheelwright shop, and has connected with it a circular saw and a lazy saw for saw-

ing wood and logs, situated west of and [adjoining] within 10⅛ feet of the north-west corner of said grist mill. The defendant purchased the premises owned and occupied by both parties in 1830, and in 1847 conveyed the grist mill, and the land upon which it stands, by metes and bounds, to Ira Baldwin, through whom the present owners of the grist mill derive their title. The mill yard and grounds of the defendant, in front of his shop, have never been fenced in from the highway. In December, 1867, the defendant placed on his land a barn. The plaintiff claimed to have acquired a right of way over the land, or a part of the same, where the barn was placed, to and from his mill, by the uninterrupted use of the same under a claim of right for more than fifteen years, and this was the only disputed question in issue on the trial.

The plaintiff's testimony tended to prove that the usual course of travel from the grist mill west, and in coming from the west to the mill, was about where the centre of the barn stood ; that if it was temporarily obstructed at that point, there was always a chance to cross at some point over the ground occupied by the barn ; that sometimes wood and-lumber were piled up next to the road, and that the travel to and from the mill passed between such lumber and wood and the defendant's shop. The defendant's testimony tended to prove that he had always occupied the yard in front of his shop, as he had occasion to use it, without regard to any right of way over it. That it had at different times, and in different years, especially in the winter and spring seasons of the year, been filled with lumber and wood, all the way from his circular and lazy saws, in front of his shop to the road, covering all the space occupied by the barn, so as to entirely obstruct travel over it.

The plaintiff testified that he never informed the defendant that he claimed to use said land, under a right of way, and that he never objected to the manner the defendant used it. And the defendant testified that he never knew that the plaintiff claimed to use the same, under a right to do so.

The defendant requested the court to charge the jury that the burden of proof was upon the plaintiff, to show that the de-

fendant knew the plaintiff was occupying said land under a claim of right. The court refused so to charge, but ruled and stated, on such request being made, that it was not necessary for the plaintiff to show knowledge on the part of the defendant, of his claim of right under which he was occupying and using, otherwise than by showing that his occupancy and use was open and notorious, and was of such a character as would indicate to those cognizant of such occupancy and use, that he was exercising it as a matter of right, and because he claimed that he had such right.

After the argument the court charged the jury on that subject:

["That an uninterrupted use under a claim of right, open and notorious, for a period of fifteen years, gives a party a right, as much so as if he had a deed from the owner of the adjoining territory, — the use under a claim of right, open, and uninterrupted and continuous."]

And that the plaintiff claimed upon this evidence that the jury should find that he had such use. Not that there have not been things upon the territory covered by the barn, wood, lumber, carriages and what not; but that whatever use of the territory covered by the barn there had been on the part of Mr. Converse in this time, had not been such as to interfere to the same extent that the barn did while there, with the passage to and from the mill door.

To which refusal and charge, in brackets, the defendant excepted.

*A. Stoddard*, for the defendant, cited *Sargent* v. *Ballard*, 9 Pick., 251; *Davis* v. *Stearns*, 7 C. & P., 570; (32 E. C. L., 634); *Livett* v. *Wilson*, 3 Bing., 119, (11 E. C. L., 57); 3 Kent's Com., 444; *Dodge* v. *Stacy*, 39 Vt., 568; *Tracy* v. *Atherton et al.*, 36 Vt., 503; *Plimpton* v. *Converse*, 42 Vt., 712; *Campbell* v. *Wilson*, 3 East, 150.

*Waterman & Reed* and *C. N. Davenport*, for the plaintiff, cited *Perrin* v. *Garfield*, 37 Vt., 304; *Dodge* v. *Stacy*, 3? Vt., 568; Angel on Lim., §§ 391–2, 395, 398, 400; Angel on Water Courses, § 215: 2 Wash. on Real Prop., 43, 45, 290; *Arbuckle* v. *Ward*,

29 Vt., 43 ; Wash. on Ease. & Serv., 152 ; *Sargent* v. *Ballard*, 9 Pick., 251; Bracton, Lib. 4, C. 37 ; *Plimpton* v. *Converse*, 42 Vt., 712.

The opinion of the court was delivered by

Ross, J.   The ruling and charge of the court, against the request of the defendant, was in substance, that an uninterrupted use, under a claim of right, open and notorious, for a period of fifteen years, gave the plaintiff a right of way across the defendant's close, as much so as if he had a deed from the owner ; and that the plaintiff was not bound to show that the defendant had knowledge of his claim of right, otherwise than by showing that his occupancy and use was open and notorious, and of such a character as would indicate to those cognizant of his occupancy and use, that he was exercising it as a matter of right.   This is a general statement of the law, in regard to the acquisition of an easement over the lands of another, by adverse use.   It presumes the use to have been *adverse* and *under a claim of right*, if it was *open* and *notorious*.   The question to be determined is, whether the facts attending the plaintiff's use in this case bring it within the general rule, or within the exception to that rule.   In *Perrin* v. *Garfield et al.*, 37 Vt., 310, the court say, " The general rule is, that the enjoyment of an easement is presumed to be adverse, unless something appears to rebut that presumption.   This is the general rule, when there is no express evidence that the user was accompanied by a claim of right, and no express evidence of a disclaimer of the right, by the party enjoying the easement.   There are some cases where the user is of such a character, and the circumstances attending it are such, as to show that it was a mere privilege, enjoyed by leave of the proprietor of the servient tenement, express or implied.   These are exceptions to the general rule, and peculiar in their character."   This exception is stated by Bracton, as found in *Sargent* v. *Ballard*, 9 Pick., 254.   " *Si autem precario fuerit, et de gratia, quæ tempestive revocari possit et intempestive, ex longo tempore non acquiretur jus.*"   The existence of this exception, and that the use of the claimed easement may be under such circumstances that no presumption will arise from its use,

that it was adverse to the servient tenement, and under a claim of right, but that such use would be presumed to be *de gratia*, or with the express or implied permission of the proprietor of the servient tenememt, has been fully recognized by the courts of Massachusetts. In *The First Parish in Gloucester* v. *William Beach*, found in a note, 2 Pick., 59, the action was trespass, *quare clausum*. The defendant pleaded a right of way by prescription, and by a non-existing grant. The close, over which the defendant claimed the right of way, had been occupied by the plaintiff for more than sixty years for a site of their meeting-house, and had not been enclosed by them. The inhabitants of the parish, as well as others, used to pass without interruption over the open land to and from the street, and back of the meeting-house. The defendant claimed to pass from the street across one end of the open lot to a barn and cordage-house, standing back of and adjoining the meeting-house lot. No other passage to the barn had been used. This had been used by the owners of the barn for over thirty years. The plaintiffs claimed that it was by indulgence, and not under an adverse claim of right, that the defendant and those under whom he justified had used the way over the close. The question was left to the jury with direction that if the passing had been continued uninterruptedly for more than twenty years, adversely, they might presume a grant; but if such usage had been by indulgence, and at the will of the plaintiffs, then the verdict must be against the defendant. The jury returned a verdict for the defendant. On a motion for a new trial for misdirection, the plaintiffs claimed that no such presumption of a grant of a way ought to be made under the facts in the case, and on full argument a new trial was granted. In *Kilburn et al.* v. *Adams*, 7 Met., 33, the same question was considered. The suit was trespass upon the case for the obstructing of a right of way. The plaintiffs were owners of a lot adjoining the land of the trustees of Groton Academy, and claimed a right of way from the north side of their lot over the academy lot to the highway. It was tried on the general issue, with notice that the defendant stopped the way by the direction of the trustees of the academy. The academy lot had remained unenclosed, and had been used for

the usual purposes of an academy lot, and as a play ground for the students. The plaintiffs showed by uncontradicted testimony that they, and those under whom they claimed the right of way, had used the same without interruption for over forty years, and so constantly as to wear up the grass; that they had filled up gullies, and carted dirt upon the way to make it better, and that the preceptor of the academy in setting four stone posts to mark the boundaries of the academy lot, set three projecting above the ground, but the fourth, which came in the path, he placed below the surface, so as not to interfere with the use of the path, by those under whom the plaintiffs claimed. These were the material facts in the case, though there were some others shown. On the advice of the judge, a *non-suit* was entered, subject to the opinion of the whole court. Ch. J. SHAW, in delivering the opinion of the court says, " The rule, we think is, that where a tract of land, attached to a public building, such as a meeting-house, town-house, school-house, and the like, and occupied with such house, is designedly left open and unenclosed for convenience or ornament, the passage of persons over it with those for whose use it is appropriated is, in general, to be regarded as permissive, and under an implied licence, and not adverse. Such use is not inconsistent with the only use which the proprietors think fit to make of it ; and therefore, until they think proper to enclose it, such use is not adverse, and will not preclude them from enclosing it when other views of the interests of the proprietors render it proper to do so. And though an adjacent proprietor may make such use of the open land more frequently than another, yet the same rule will apply, unless there be some decisive act, indicating a separate and exclusive use under a claim of right. A regularly formed and wrought way across the ground, paved, macadamized, or gravelled and fitted for use as a way, from his own estate to the highway, indicating a use distinct from any use to be made of it by the proprietors, would, in our opinion, be evidence of such a claim of right. So would be any plain, unequivocal act, indicating peculiar and exclusive claim, open and ostensible and distinguishable from that of others. But the fact that a particular track or line was a little more worn and marked by travel than the

general surface of the lot, or that the adjacent proprietor had occasionally levelled a spot gullied by the rain, could scarcely be regarded, independently of other proof, as indicative of a claim of right." The court refused the motion for a new trial. The same general doctrine is recognized by Mr. Washburn in his work on Real property. In vol. 2, p. 43, he says, " And it has been held that mere passing across open uninclosed land would not gain a right of way, without something to show that by so doing a right to use such was asserted." By these authorities, we think the general doctrine is established, that, wherever the owner of land throws it open to the public to pass and repass on in connection with the use to which he appropriates it, the mere use of the land by an adjoining proprietor for a way to his own premises, though that use is uninterrupted, open and notorious, will be presumed to be with the permission of the proprietor, and will not be presumed to be adverse to the owner, or under a claim of right by the adjoining proprietor ; that the party claiming to establish a right of way, in such a case, must show some act appropriating the way peculiarly to himself, more pronounced and more clearly indicative of a claim of right, than the open and notorious use of the way by himself. In this case the plaintiff claims to have acquired a right of way across the defendant's lot from the highway to his grist-mill. The lot of the defendant is adjoining, and west of the plaintiff's grist-mill and lot, and has remained, during the entire period of the plaintiff's use of the way, unenclosed and open to the highway for the accommodation of customers to the defendant's carriage-shop, circular saw and lazy saw, which are situated on the defendant's lot west of the plaintiff's grist-mill, and farther back from the highway. The use to establish the way had been, mostly, by customers in passing from the highway to and from the plaintiff's grist-mill. The plaintiff's lot extends to the highway and was thrown open for the use of customers, coming to and departing from his mill. The highway runs easterly and westerly past the premises, both of the plaintiff and of the defendant, both of which were unenclosed and left open for the use of the customers of each to pass and repass on. There was no division fence extending from the highway southerly be-

tween their lots thus occupied. The customers from the west, coming to or departing from the plaintiff's mill, would naturally, and of their own volition, be led to pass across the northwest corner of the defendant's lot, because the distance would be less, and the turn more gradual than it would be to follow the highway past the defendant's lot and turn at a right angle to the plaintiff's mill. For a like reason, customers from the east going to and departing from the defendant's shop, would naturally, and of their own accord, pass over the northwest corner of the plaintiff's mill lot. This use of the defendant's lot by customers to the plaintiff's mill, was not inconsistent with the use to which the defendant had put his lot for the accommodation of customers in getting to and from his shop. The plaintiff testified that he never informed the defendant that he claimed to use the land under a right of way, and the defendant, that he never knew that the plaintiff claimed to use the same under a right to do so. We think the fact that the defendant threw his land open to the public for the use of persons having business at his carriage-shop and saws, gave an implied invitation and permission to every one, who had occasion so to do, to pass over the lot freely ; and that the use thereof by the plaintiff and the customers to his mill for such a purpose, should be presumed to have been *de gratia*, or with the implied permission of the defendant, and that no presumption of the assertion of an adverse right would arise therefrom. The use of the way by the customers to the plaintiff's mill is peculiar, and less forcible in establishing a right of way in the plaintiff, and that it was under a claim of right by the plaintiff, than if it had been wholly by the plaintiff, or by his confessed agents and servants.

From the defendant's stand-point this use might appear to have been quite as much under a claim of right in themselves, or the public generally, as under a claim of right by the plaintiff. Hence we hold there was error in the charge of the court below, not that it is an incorrect statement of the law as applicable to evidence tending to establish a right of way over inclosed land, but that it is erroneous when applied to the facts of this case. The instruction given presumes the use, if open and notorious, to have

been adverse and under a claim of right, and allows the jury to find from such use that it was adverse and under a claim of right, while we hold that, under the circumstances, the jury should have been instructed that the presumption was the other way, that is, that such use was with the implied permission of the defendant, from which no claim of right could be inferred.

It is also claimed there was error in the charge of the court in regard to the effect of the occupancy, by the defendant, of his own lot, as interfering with the plaintiff's use of the way. It seems to us that it lacks the usual clearness of the learned judge in his instructions to the jury. In no part of the reporter's minutes of the charge do we find that he instructed the jury that to acquire a right of way, the plaintiff's use must be confined to substantially the same track, entering upon and leaving the defendant's land at substantially the same points. Without this, it seems to us that that portion of the charge which speaks of the defendant's occupation " as constituting an interference, as the barn interfered with the getting to and from the mill door," and that such occupancy " would not operate beyond the actual limit of it," is calculated to mislead the jury, as it would leave them at liberty to find a way established, though not confined to substantially the same locality, if the customers could pass, at all times, from the mill door to some variable point along the highway, and that, too, when not passing along substantially the same track, but, by turning, now this way and then that, to avoid any interference which the occupation by the defendant might occasion. We do not understand, and presume the learned judge did not mean to have the jury understand, that the plaintiff could gain a right of way across the defendant's lot by traveling promiscuously across the same, one year in one track and another year in another track, the whole or part of the way, as might be necessary to avoid any obstruction thereof by the defendant's occupation. Yet we think the jury might have obtained such an understanding from the charge. A way must start from a fixed point and lie along a definite course, to another fixed point; and to acquire a right of way by adverse use, the plaintiff must have used the same, within its defined lim-

its, uninterruptedly, openly, notoriously, and *adversely* to the defendant's rights and use, for fifteen years.

The judgment of the county court is reversed, and the cause remanded.