ERNEST W. WOOSTER *vs.* ALLEN A. FISKE.

Hancock.    Opinion August 16, 1916.

*Dedication of land to public use. Presumptions as to permissive use of*
*way.    Private and Public ways.*

Action of trespass quare clausum to recover damages for injury to the plaintiff's land in the town of Hancock.

*Held:*

1. The jury found that the road in question was a public way, and in so finding erred. The instances of use of the road from all the witnesses during its history are confined to individuals having private interests in adjoining lots, and by sportsmen, and such use was not made by any of these as travellers as of right, but privately, and the contrary not appearing, presumably by permission. There is no evidence that ordinary travel ever passed over the road from one end to the other, or that it was ever dedicated to public uses, or that any owner of the land ever assented to its use for public purposes, as a public way.

2. Dedication exists only when so intended by the party, and permissible use does not prove it.

3. Where there has been a cessation for twenty years, unexplained, to use a way originally acquired by use, it is regarded as a presumption, either that the former presumptive right has been extinguished in favor of some adverse right, or, when no such adverse right appears, that the former has been surrendered, or that it never existed.

VOL. CXV II

· Action of trespass quare clausum. Plea, general issue and brief statement claiming right of way. Verdict for defendant. Plaintiff filed motion for new trial. Motion sustained. New trial granted.

Case stated in opinion.

· *Hale & Hamlin,* for plaintiff.

*William E. Whiting,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, HALEY, HANSON, PHIL-BROOK, JJ.

HANSON, J. This is an action of trespass quare clausum to recover damages for injury to the plaintiff's land in the town of . Hancock, in which the plaintiff claims that the defendant "with his cattle and team wagon did trample, cut up and injure the said land." The jury found for the defendant, and the case is before the court on the plaintiff's general motion for a new trial.

The plaintiff's land consists of one hundred and thirty acres, of which about twelve acres are now under cultivation as a fruit farm; the rest of the lot is covered with growth of various sizes, but mainly second growth. The easterly side line of the land is parallel with the Maine Central Railroad right of way at Washington Junction in the town of Hancock. The county road leading from said Junction to Ellsworth crosses the southwesterly corner of the plaintiff's land, and passes the cultivated portion mentioned. The case shows that for at least seventy years, and dating back to the time when the whole lot was wild land, there was a road running from the southwest corner, across the land, to the northeast corner, and for a period nearly if not quite as long, a branch road from the center of the lot to the northwest corner thereof. The branch road led to the defendant's land, a smaller lot adjoining the plaintiff's and containing thirty-one acres. The defendant's land was north of the county road about one-half mile, and he could reach the county road either by using the road hereinbefore described, or by another similar road extending westerly from his lot to the county road. The origin of the first named road is in doubt. It is not disputed that early in the last century the road led to a small water mill near the northeast corner of the land. The character of the road, as appearing from the evidence, is similar to

all winter roads running through wild lands, where from time to
time work has been resumed in winter, with occasional use in
summer by sportsmen, and by settlers hauling hay in the fall. It
is apparent that until the plaintiff made some improvements within
the last seven years, the road had not been repaired by any person
for fifty years at least. The defendant has occasionally used the
road since he purchased his lot in 1913, admits the acts complained
of, and justifies under the following brief statement: "that he was
rightfully upon the premises, and had a right to use the road
.   .   .   under and by virtue of a public right of way   .   .   .   and
failing in this that he still had a right to use said premises   .   .   .
under and by virtue of a private right of way."

The history of the case shows that the defendant's predecessor,
one Keefe, first occupied this lot, and built a house thereon in 1856,
and tilled and cultivated three or four acres of land; that for a
period of six years, Keefe and the members of his family used the
road in question for all purposes, with team and on foot. Keefe
sold to Mrs. Celia Larkin in 1864. It appears too that about the
year 1856, the mill mentioned above was abandoned, but from
earliest times the road has been used by sportsmen in each year, and
by owners of adjoining lots, to pass over with hay in summer and
hay and wood in winter, with lumber from the mill, and with logs
from other lots, but so far as the defendant's lot was involved, after
1864, to 1903, it was practically abandoned for a period of thirty-
eight years, the houses on the lot were also abandoned and torn
down, and as evidence of such abandonment, and the lapse of time,
it appears from witnesses on both sides that trees ten and twelve
inches in diameter are growing in the cellar of one of the houses.

Mr. John O. Keefe, son of the former owner of defendant's lot,
throws much light upon the question involved. He said, among
other things: "I shall be seventy-seven my next birthday. Father
built there in 1856," adding that the family lived there six years,
and moved off in 1861. Questioned further as to how he went to
his farm, he said: "Well, that depended upon what we was going
with; if we had a team we went in by the Bachelder (plaintiff's)
place; if we walked we went out across by the cemetery," the latter
way being a way leading southwesterly from his own lot and meet-

ing the highway north of the first described road. "Q. And then the other road that circled around by Simmons pond came in by another point, or did it join it somewhere? A. That has been put on there since I sold the land; I sold the land to Larkin in 1864, and there wasn't enough on it then to get a one horse load of wood off that thirty-one acres of land; it has all growed up since that time."

The next cutting on the lot was in 1903, and no other use or occupancy of the defendant's land, or land adjoining, appears in the thirty-eight years, except such use as one Soucier made of the Higgins farm, so called, a use unexplained, at a date not fixed by witnesses, but for all practical purposes established by the growth of the trees in the cellar above named on which his house stood.

The facts are substantially as stated, and upon the issue raised, the presiding Justice instructed the jury that there was no evidence to prove that the road was a private way. The jury upon the remaining issue found that the road in question was a public way, and in so finding erred. The instances of use of the road from all the witnesses during its history are confined to individuals having private interests in adjoining lots, and by sportsmen, and such use was not made by any of these as travelers as of right, but privately, and the contrary not appearing, presumably by permission. There is no evidence that ordinary travel ever passed over the road from one end to the other, or that it was ever dedicated to public uses, or that any owner of the land ever assented to its use for public purposes, as a public way. Dedication exists only when so intended by the party, and permissible use does not prove it. *White* v. *Bradley,* 66 Maine, 254; *City of Cincinnati* v. *The Lessee of White,* 6 Peters, 431; *Sevey's Case,* 6 Maine, 118; *Bangor House* v. *Brown,* 33 Maine, 309. *Cole* v. *Sprowl,* 35 Maine, 161; *State* v. *Wilson,* 42 Maine, 9. See *Washburn on Real Property,* 6th Ed., Sec. 1263; *Lyon* v. *Hamor,* 73 Maine, 56; *Words and Phrases,* 1908; *Anderson* v. *Dyer,* 107 Maine, 342.

It is well settled that where there has been a cessation for twenty years, unexplained, to use a way originally acquired by use, it is regarded as a presumption, either that the former presumptive right has been extinguished in favor of some other adverse right,

or, where no such adverse right appears, that the former has been surrendered, or that it never existed. *Washburn on Real Property,* Vol. 2, Sec. 1274; *Farrar* v. *Cooper,* 34 Maine, 394.

The entry will be,

> *Motion sustained.*
> *New trial granted.*