HARRY A. GORE *v.* WILLIAM R. BLANCHARD.

May Term, 1922.

Present:    WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 24, 1922.

*Dedication—Classification—Implied Dedication—Intention of Owner—What Is Necessary to Establish Dedication by Conduct of Owner Alone—Who May Rely on Such Conduct— When Dedication Presumed From User—Evidence of Intent—When Insufficient—Prescription—Presumptions—*

*Highways—Boundaries—Evidence—Effect of Use by Plaintiff of Statements and Conduct of Defendant's Grantor.*

1. A "dedication" is the setting apart of land for the public use.
2. A dedication may be express or implied.
3. An implied dedication is one arising, by operation of law, from the acts of the owner.
4. An implied dedication need not be evidenced by writing, nor by any form of words, oral or written, but may be established by evidence of conduct, and in many ways, provided the intention of the owner, which is the foundation and life of every dedication, clearly appears.
5. When the conduct of the owner, alone, is relied on to establish an intention to dedicate land to public use, such conduct must be convincing and unequivocal, indicating by plain implication, a purpose to create a right in the public to use the land adversely to him, and as of right.
6. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent with respect to dedication.
7. While long acquiescence in user by the public, under certain circumstances, is evidence of an intent to dedicate land to public use, dedication will not be presumed from user, alone, unless the attending circumstances are such as to clearly indicate an intent on the part of the owner to devote the property to public use.
8. In ascertaining the intent of the owner, potent factors for consideration are, the character of the property, the location of the road or street, the amount of travel, the nature of the use of the public, the rights asserted by the public, the knowledge of the owner, and like circumstances.
9. Travel by some of the inhabitants of a certain locality, for a number of years, over a worthless strip of uncultivated, unenclosed land, although with the knowledge of the owner, for the purpose of getting ice in winter, and occasionally for fishing, with other circumstances, *held* insufficient to establish an intention of the owner to dedicate the way to public use.
10. Inasmuch as the public cannot take by grant, prescription, which presupposes a grant, in its strict sense, seems to have no application to highways, though if a prescriptive right in the public

may be thus acquired, it must appear that the public's use was open, notorious, adverse, and under claim of right, for the requisite period.

11. While the general rule is that the use will be presumed to have been adverse and under a claim of right, if open and notorious, this does not apply where the circumstances of the case are such as to raise the presumption that the use was with the permission of the owner.

12. The width of a highway acquired by user is determined by the extent of the actual use and occupation, or by other marks and boundaries, indicating the extent of the claim; and when a fence had been on the westerly side of such a highway from the time it was established, *held*, that, on the evidence in the case, such fence marked the limits of the highway in that direction.

13. In an action of tort to recover damages for being deprived by the defendant of the use of a way the right to the use of which the plaintiff failed to show, he cannot avail himself of evidence which he claims tended to show that the defendant was not the owner of the land over which the way extended.

14. In an action of tort to recover damages for being deprived by the defendant of the use of a way, the plaintiff, in effect, admitted the defendant's grantor to be the owner of the *locus* at the time he built a fence from the road to a pond, by claiming that what he did and said in that connection was evidence tending to show a dedication of the way.

ACTION OF TORT to recover damages for the obstruction of a way. Plea, the general issue. Trial by jury at the December Term, 1921, Bennington County, *Butler*, J., presiding. At the close of the plaintiff's evidence, the court directed a verdict in favor of the defendant. The plaintiff excepted. The opinion states the case. *Affirmed.*

*Holden & Healy* for the plaintiff.

*Henry Chase* and *E. C. Bennett* for the defendant.

SLACK, J. The action is tort to recover damages which the plaintiff claims to have suffered from not being allowed to use

a certain way, which he claims was a public or common way, during the winter of 1920-21. At the close of the plaintiff's evidence the court, on motion of defendant, directed a verdict in his favor to which the plaintiff saved an exception. The plaintiff urges several reasons why the case should have been submitted to the jury. His chief claim is that as against the land owner, the defendant, the public had acquired the right, by dedication and by prescription, to use the way in controversy.

The plaintiff's evidence fairly tended to establish these facts: There is a pond in the town of Pownal which covers from twenty-five to forty acres. In part, but to what extent did not appear, it is caused by a dam maintained at the outlet, which is at the north end. A highway known as the East Road, hereafter referred to as the road, runs along the east shore, and the claimed way, hereafter referred to as the way, extends west from the road to the pond. At the point where the way is located, the distance from the road to the pond, when the water is at its usual height, is about two rods, although at times the water is up to within a few feet of the road. The land between the pond and the road from the outlet to a point south of the way varies in width from eight or ten feet to two rods. So far as appears, this land never was fenced previous to about 1916. The land over which the way extends is comparatively smooth and level, but the land immediately north of it to the outlet is steep, stony, and covered with bushes, and is unfit for cultivation or pasture. People living in the vicinity of the pond have cut ice on it for the last twenty-five to fifty years. The ice so cut has been taken from the pond over four different routes, including the way in question, the route used depending, apparently, upon the choice of the person using it. The way in question is smoother and more level than any of the other routes, and was more convenient, in all ways, for most of the people who have taken ice from the pond. Many people have drawn ice over this way each winter during the time above mentioned, and some of them have used it for that purpose continuously for more than fifteen years, without asking permission from any one. On a few occasions logs have been hauled over this way, and it has sometimes been used by fishermen and others who were going to the pond. One Gardner owned the land now owned by defendant from April, 1915, to September, 1917. When he bought it there was a fence on

the west side of the road to a point about twenty feet south of the way, but no fence from the road to the pond. He extended the fence north along the road about twenty feet and built a fence from the north end of the extension to the pond. The latter fence is the south boundary of the way.

There was no record evidence of the defendant's title, but witnesses testified that Kimball, Hodge, Michaels, Thompson, Gardner, and the defendant, in the order stated, owned, or occupied, the defendant's land during the time covered by the use shown. When or how long Kimball owned it did not appear, neither did it appear when Hodge's ownership began. Michaels bought of Hodge, he thought, about December 22, 1911, and owned it over a year, when he sold to Thompson. The latter sold to Gardner in April, 1915, and he sold to defendant in September, 1917. Hodge, Michaels, and Gardner had actual knowledge of the use made of the way. What knowledge Kimball and Thompson had of that fact, if any, did not appear, neither did it appear where they lived or what opportunity they had to acquire such knowledge. Michaels testified that he did not know where his boundaries were and did not know that the way was on his land.

Gardner testified that he knew people were accustomed to use the claimed way for the purpose of getting ice, and never objected to it, that there was no particular road that they drove over from the pond to the highway, that "they drove just where they had a mind to, coming off the pond to the road, to the highway," that he built the fence south of the way where he did so · that people could use the way and intended to have them use it, but that he did not know of any right of way over his land from the pond to the road and did not know that people claimed the right to drive there. There was no direct evidence that any of the users of this way acted under a claim of right, and it is not claimed that it was ever adopted or in any way recognized by the town officials. In February, 1919, the defendant closed the way of stringing wire from the north end of the fence west of the road to a post on the north side of the way.

[1-6] A dedication is the setting apart of land for public use. It may be express or implied. It is not claimed that there was an express dedication of the way in controversy, but it is claimed that the evidence of user and the conduct and

testimony of Gardner tended to show an implied dedication. An implied dedication is one arising, by operation of law, from the acts of the owner. It need not be evidenced by any writing, nor, indeed, by any form of words, oral or written, but may be established by evidence of conduct, and in many ways, provided the intention of the owner, which is the foundation and life of every dedication, clearly appears. 8 R. C. L. 890. "It is not a trivial thing to take another's land" without compensation, "and for this reason the courts will not lightly declare a dedication to public use. * * * An intention to dedicate upon the part of the owner must be plainly manifest." *City and County of San Francisco* v. *Grote,* 120 Cal. 62, 52 Pac. 128; *Attorney General* v. *Lakeview Land Company,* 143 Ala. 291, 39 So. 303. And when the conduct of the owner, alone, is relied on to establish intention it must be convincing and unequivocal, indicating, by plain implication, a purpose to create a right in the public to use the land adversely to him, and as of right. 8 R. C. L. 890. This, however, does not mean a secret intent, but an intent expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. 18 C. J. 53.

[7] Long acquiescence in user by the public, under certain circumstances, is evidence of an intent to dedicate land to public use. It is said in *Knight* v. *Heaton,* 22 Vt. 480, that "It is every day's practice, to presume a dedication of land to the public use from an acquiescence of the owner in such use." See also *County of Bennington* v. *Town of Manchester et al.,* 87 Vt. 555, 90 Atl. 502. But a dedication will not be presumed from user, alone, unless the attending circumstances are such as to clearly indicate an intent on the part of the owner to devote the property to public use.

The security and certainty of the title to real estate are among the most important objects of the laws of any civilized community. Around it the law has thrown certain solemnities and formalities so that the fact may be known and read of all men. What a man once had he is not presumed to have parted with, but the facts must be shown beyond conjecture. *Hogue* v. *City of Albina,* 20 Or. 182, 25 Pac. 386, 10 L. R. A. 673; *Portland Ry. Light & Power Co.* v. *Oregon City,* 85 Or. 574, 166 Pac. 932; *City and County of San Francisco* v. *Grote, supra; Cooper*

v. *Monterey County,* 104 Cal. 437, 38 Pac. 106; *State* v. *Hood,* 143 Mo. App. 313, 126 S. W. 993; *Village of Hailey* v. *Riley,* 14 Idaho, 481, 494, 95 Pac. 687, 17 L. R. A. (N. S.) 86; *Hartly* v. *Vermillon et al.,* (Cal. Sup.) 70 Pac. 273.

User which will afford a presumption of intent to dedicate in some circumstances will not justify such a presumption in other circumstances.

[8] The character of the property, the location of the road or street, the amount of travel, the nature of the use of the public, the rights asserted by the public, the knowledge of the owner and like circumstances are potent factors in ascertaining the intent of the owner. *Wooster* v. *Fiske,* 115 Me. 162, 98 Atl. 378; *F. A. Hihn Co.* v. *City of Santa Cruz,* 170 Cal. 436, 150 Pac. 62; *Investment Co.* v. *Highland Co.,* 29 S. D. 169, 135 N. W. 684; *Harriman* v. *Howe et al.,* 78 Hun. 280, 28 N. Y. S. 858.

[9] Where the owner of land knowingly permits the public to enter thereon and build streets, erect buildings, and make extensive improvements, without express authority, it may well be presumed that he intended to dedicate the land to such use. Such is *County of Bennington* v. *Manchester et al., supra.* But no such presumption arises where, as in the instant case, it merely appears that some of the inhabitants of a certain locality, even with the knowledge of the land owner, traveled over a small, worthless strip of uncultivated, unenclosed land for the purpose of getting ice in the winter, and occasionally for the purpose of fishing. Such use did not damage or inconvenience the land owner, and to have opposed it would have been regarded as unneighborly and churlish. There is no claim that ordinary travel ever passed over this way, and the use shown was of a purely private nature. There is no evidence that any of the users of this way, except the plaintiff, ever claimed to use it as a matter of public right, or that the public had any rights in it, or that the owner of the land ever assented to its use for public purposes, as a public way.

The conduct and declaration of Gardner concerning the erection of the fence south of the way, when weighed in the light of the attending circumstances, as they must be, are not sufficient to support an inference that he intended to devote this way to public use, to create in the public a right which would forever preclude him from using it if he chose so to do.

Since no evidence appears from which an intention to dedicate could properly be found, the question of whether the public can accept an offer to dedicate, is not reached.

[10, 11] Inasmuch as the public cannot take by grant, prescription, which presupposes a grant, in its strict sense, seems to have no application to highways. In a well reasoned opinion in *Post* v. *Pearshall,* 22 Wend. (N. Y.) 444, it is said, "As to the *public,* the only way in which they can at the common law acquire an easement in the lands of another is, by *dedication.*" Nevertheless there are cases in which the doctrine of prescription has been applied to highways. But assuming that a prescriptive right in the public can be thus acquired, it must appear that the public's use was open, notorious, adverse and under a claim of right, and that such use continued for the requisite period. While the general rule is that the use will be presumed to have been adverse and under a claim of right, if open and notorious, this rule is not without its exceptions. See *Plimpton* v. *Converse,* 44 Vt. 158, where the use shown was held to raise the presumption that it was with the permission of the owner. We think the circumstances in this case—the character of the land used, and the nature and extent of the user—raise a like presumption here. The use made of the property in question by those traveling over it does not appear from the evidence to have been at any time either adverse to the owner or under a claim of right, but rather a mere neighborly concession. Any one was allowed to travel over the tract for convenience, as is often the case with land so situated, as it did no harm and the use was apparently permissive in its very nature. *Parrott* v. *Stewart,* 85 Or. 254, 132 Pac. 523; *Fairchild* v. *Stewart,* 117 Iowa 734, 89 N. W. 1075; *Shaver* v. *Edgell,* 48 W. Va. 502, 37 S. E. 664; *People* v. *Osborn,* 84 Hun. 441, 32 N. Y. S. 358; *Harriman* v. *Howe et al.,* 78 Hun. 280, 28 N. Y. S. 858, 861; *O'Connell* v. *Chicago Terminal Transfer R. Co.,* 184 Ill. 308, 56 N. E. 355; Jones on Easements, § 470. See also *State* v. *Nudd,* 23 N. H. 327, and *Merchant* v. *Markham,* 170 Ala. 278, 54 So. 236.

[12] The plaintiff claims that the evidence tended to show that the obstruction which prevented his use of the claimed way was erected within the limits of the East Road, the highway which the claimed way intersected. We find no evidence to sup-

port this claim. The plaintiff's evidence that the East Road was a highway did not go beyond defendant's concession that it ·was a "public highway by user." The width of a highway thus acquired is determined by the extent of the actual use and occupation, or by other marks and boundaries indicating the extent of the claim. *Morse* v. *Ranno,* 32 Vt. 600. The fence on the west side of the East Road marks the limit of that highway in that direction, since it did not appear that that fence has been moved since the highway was established. The evidence of the width of the East Road and the nature of the ground east of it, and that the water of the pond at times came nearly to the wrought portions of the road has no tendency in the circumstances, to establish its west limit elsewhere.

[13, 14] It is claimed by the plaintiff that the evidence tended to show that the defendant did not own the land over which the way extends, and, therefore, was a mere intruder in what he did. Assuming this to be so, it is not apparent how that can avail the plaintiff since he failed to show a right to use the way. But the evidence does not justify this claim. The only evidence to which our attention has been called as supporting this claim is the testimony of a former owner of defendant's farm that he did not know where his boundary lines were, and the fact that the water of the pond at times came nearly to the edge of the road. This evidence has no tendency to show that the defendant did not own the *locus* in question. On the other hand, the defendant's grantor testified that his lot "run right into the northeast corner of the pond, near the outlet," which would, as we have seen, cover the land in dispute. Moreover, the plaintiff, in effect, admitted the defendant's grantor to be the owner of the *locus* at the time he built the fence from the road to the pond by claiming that what he did and said in that connection was evidence tending to show a dedication of the way.

This disposes of the questions briefed by plaintiff.

*Judgment affirmed.*