## Community Feed Store, Inc. v. Northeastern Culvert Corporation

[559 A.2d 1068]

No. 86-224

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed January 20, 1989

Motion for Reargument Denied February 16, 1989

*J. Eric Anderson* of *Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, for Plaintiff-Appellant.

*Jean Anne Kiewel*, Bellows Falls, for Defendant-Appellee.

**Gibson, J.** Plaintiff brought an action claiming a prescriptive easement over a portion of defendant's land. The trial court rejected the claim and, instead, entered judgment for defendant on its counterclaim for ejectment, from which plaintiff appeals. We reverse.

## I.

Plaintiff operates a small wholesale and retail animal feed business in Westminster Station, Vermont. Defendant is a neighbor-

ing business which owns the land adjacent to that upon which plaintiff's buildings stand. At issue is a parcel of land to the north of plaintiff's principal building (the "mill"), which testimony showed to be a rectangular area measuring approximately 60 x 90 feet, covered with gravel but not otherwise improved. Plaintiff owns that part of the gravel area extending approximately twenty-eight feet to the north of the mill; the remainder belongs to defendant.

The mill has loading areas on both the north and south sides: the north loading dock is used mostly by trucks delivering bag feed and by customers coming to pick up feed, while the southern area is where plaintiff receives shipments of feed in bulk. Testimony showed that vehicles using either loading area would use the gravel lot for turning and backing. Evidence tended to show that the suppliers' trucks as well as the customers' smaller vehicles used the gravel lot for this purpose.[1]

Although defendant bought its land in 1956, it was not until a new survey was made in 1984 that it was conclusively established that the bulk of the gravel area used by plaintiff's vehicles actually belonged to defendant. Defendant then erected a barrier at approximately the location of the survey line to prevent cars and trucks from using its portion of the gravel area, precipitating plaintiff's lawsuit for declaration of a prescriptive easement.

The court, after making findings of fact, concluded that plaintiff's claim of a prescriptive easement failed for two reasons: first, plaintiff failed to prove with sufficient particularity the width and length of the easement; and second, any use of the area in question by plaintiff or its customers was made with the permission of the fee owner. Plaintiff claims that the court erred in these conclusions and in the findings of fact supporting them, and that the record as a whole supports the conclusion that a prescriptive easement exists.

## II.

Findings of fact will not be overturned on appeal unless they are clearly erroneous. V.R.C.P. 52(a). The evidence must be viewed in the light most favorable to the prevailing party, and the

---

[1] The use claimed is both for plaintiff's own vehicles and those of its customers. For ease of discussion, however, we will only refer to plaintiff's vehicles in this opinion.

findings will be upheld if supported by reasonable or credible evidence, even if contrary evidence exists. *Harlow* v. *Miller,* 147 Vt. 480, 481-82, 520 A.2d 995, 997 (1986). Despite this strict standard, a thorough review of the record leads us to the conclusion that plaintiff is correct in its claims that the court erred in making two findings of fact.

Finding 17 states as follows:

> The prescriptive easement claimed by plaintiff is over a portion of defendant's property . . . just north of the northern boundary of plaintiff's property for use by its suppliers and customers. The claimed easement is for various vehicles to turn and back up to a dock which has been constructed on the east side of plaintiff's building for loading and unloading.

While the first sentence of this finding accurately described the easement claimed, the second sentence is clearly erroneous in that the record contains no evidence that a loading dock existed on the mill's east side. The easement claimed is for use of the disputed area by vehicles gaining access either to the loading dock on the mill's north end, or to the area at the south end of the building used by bulk suppliers to deliver feed. Since this finding is not supported by any evidence, it is erroneous.

### III.

In Finding 18, the court held that although "all types of vehicles have turned and backed up to plaintiff's building for loading and unloading since the early 1920s," plaintiff had "failed to prove by the requisite measure of proof as to what portion, if any, of defendant's land" was used by plaintiff's vehicles. This finding, which entails both an issue of law (the measure of proof necessary to establish an easement) and an issue of fact, served as the basis for the court's first conclusion of law denying the claim for a prescriptive easement.

The elements necessary to establish a prescriptive easement and adverse possession are essentially the same under Vermont law: an adverse use or possession which is open, notorious, hostile and continuous for a period of fifteen years, and acquiescence in the use or possession by the person against whom the claim is asserted. *Russell* v. *Pare,* 132 Vt. 397, 401, 321 A.2d 77, 81 (1974);

12 V.S.A. § 501. The difference lies in the interest claimed. The term "prescription" applies to the acquisition of nonfee interests, while "adverse possession" indicates that the interest claimed is in fee. *Russell* v. *Pare*, 132 Vt. at 401, 321 A.2d at 81; *Barber v. Bailey*, 86 Vt. 219, 223, 84 A. 608, 611 (1912).

■ Adverse possession may be asserted either under claim of title (where claimant took possession under a deed which is for some reason defective), or under a claim of right which arises from the open, notorious and hostile possession of the land at issue. Where there is color of title, it is relatively simple to ascertain the extent of the possession claimed, since "actual and exclusive occupation of any part of the deeded premises carrie[s] with it constructive possession of the whole . . . ." *Montgomery* v. *Branon*, 125 Vt. 362, 365, 216 A.2d 41, 43 (1965). In the absence of color of title, however, and where a lot has no definite boundary marks, adverse possession can only extend as far as claimant has actually occupied and possessed the land in dispute. *Langdon* v. *Templeton*, 66 Vt. 173, 179, 28 A. 866, 871 (1893).

■ Where prescriptive use is claimed, our law requires proof similar to that needed to establish adverse possession under claim of right. In *Morse* v. *Ranno*, 32 Vt. 600, 607 (1860), this Court held that where a claim of prescriptive easement for a public highway over private land was made,

> the extent of the acquisition, the width of the road, must be determined by the extent of the actual occupation and use. There can be no constructive possession beyond the limits which are defined by the user upon the land, or by other marks or boundaries marking the extent of the claim.

See also *Gore* v. *Blanchard*, 96 Vt. 234, 242, 118 A. 888, 894 (1922) (width of highway acquired by user is determined by the extent of the actual use and occupation or by other marks and boundaries indicating the extent of the claim). In both *Morse* v. *Ranno* and *Gore* v. *Blanchard*, as with claims of adverse possession made without color of title, no constructive possession was held to exist beyond the actual occupancy or use made. The decisions did not, however, set forth any standard by which one must prove the limits of use, other than to refer to "marks and boundaries."

In *Dennis* v. *French*, 135 Vt. 77, 79, 369 A.2d 1386, 1387-88 (1977), a prescriptive right of user of a roadway was found as to

four uses: "[h]auling of firewood . . . by entering said roadway from Route 302," "[e]ntering and leaving the . . . property, by foot and tractor," "[h]auling hay, stones and brush from the . . . property behind the house by truck or tractor," and "[t]o gain access to a chicken house maintained behind the house." This Court held that "[t]he *extent* of the *presumed right* is determined by the *user*, upon which is founded the presumed grant; the right granted being only *co-extensive* with the right enjoyed." *Id.* at 80, 369 A.2d at 1388 (emphasis in original). As can be seen from the four uses found in *Dennis*, that Court did not require much specificity in defining the extent of the easements, but instead relied on a general outline of the uses made.

This approach to defining the extent of a prescriptive easement is reflected in the position taken by the drafters of the Restatement of Property, which states that "[t]he extent of an easement created by prescription is fixed by the use through which it was created." Restatement of Property § 477 (1944).

> No use can be justified under a prescriptive easement unless it can fairly be regarded as within the range of the privileges asserted by the adverse user and acquiesced in by the owner of the servient tenement. Yet, no use can ever be exactly duplicated. If any practically useful easement is ever to arise by prescription, the use permitted under it must vary in some degree from the use by which it was created. Hence, the use under which a prescriptive easement arises determines the *general outlines* rather than the minute details of the interest.

*Id.*, comment b (emphasis added).

In California, case law requires claimants to show prescriptive easements by "a definite and certain line of travel" for the statutory period. *Warsaw* v. *Chicago Metallic Ceilings, Inc.*, 35 Cal. 3d 564, 571, 676 P.2d 584, 587, 199 Cal. Rptr. 773, 776 (1984). Despite the apparently restrictive nature of that standard, however, the *Warsaw* court, on facts almost identical to ours, found that an easement existed for the purpose of trucks turning around and positioning themselves at loading docks attached to plaintiff's building, stating that " '[s]light deviations from the accustomed route will not defeat an easement, [only] substantial changes which break the continuity of the course of travel . . . .' " *Id.* (quoting *Matthiessen* v. *Grand*, 92 Cal. App. 504, 510, 268 P. 675,

679 (1928)); see also *Wright* v. *Horse Creek Ranches*, 697 P.2d 384, 388 (Colo. 1985) (adopts test for determining extent as set forth in Restatement § 477); *Reynolds* v. *Soffer*, 190 Conn. 184, 190, 459 A.2d 1027, 1031 (1983) (where right of way was "clearly visible," it met the requirement that an easement be measurable with "reasonable certainty"; remanded to trial court for further findings as to extent); *O'Brien* v. *Hamilton*, 15 Mass. App. 960, 962, 446 N.E.2d 730, 732, *review denied*, 389 Mass. 1102, 448 N.E.2d 767 (1983) (extent must be measured by general pattern formed by adverse use); *Preshlock* v. *Brenner*, 234 Va. 407, 410, 362 S.E.2d 696, 698 (1987) (prescriptive easement is measured by the character of the use).

■ From the case law cited above, it is clear that when a prescriptive easement is claimed, the extent of the user must be proved not with absolute precision, but only as to the general outlines consistent with the pattern of use throughout the prescriptive period. We hold that where a claimant adduces enough evidence to prove those general outlines with reasonable certainty, it has met its burden on that issue.

In this case, the trial court had before it extensive evidence as to the nature and scope of the user claimed. Testimony showed that the gravel area at issue was approximately 60 by 90 feet long, extending from the northern end of the mill approximately to where a railroad call box (attached to what resembles a telephone pole) is located. Surveys were introduced showing the exact northern boundary of plaintiff's land, falling approximately twenty-eight feet to the north of the mill and, therefore, twenty-eight feet into the gravel area. Photographs were also admitted into evidence clearly showing the gravel area and the northern loading dock. In addition, plaintiff's president drew a diagram showing the use of the gravel area by trucks and cars, indicating the railroad call box as the north limit.

Under the standard discussed above, we conclude that plaintiff met its burden by establishing the general outlines of the easement with reasonable certainty.

### IV.

■ The second — and in its own view, more important — basis upon which the court denied plaintiff's claim was its conclusion that any use made by plaintiff was with the fee owner's permis-

sion. The only finding of fact that might support this conclusion is Finding 25, which, referring to a 1984 discussion between plaintiff's president (Paul Clough) and defendant's president (Roland Scott), states that

> as a result of [this] discussion Paul Clough took the position that defendant's predecessor in title gave the plaintiff permission to use the land in dispute. At a later discussion Paul Clough took the position that he was entitled to a prescriptive easement over the property in question.

This finding merely reiterates conflicting testimony, stating that on two separate occasions Paul Clough took two different positions regarding whether plaintiff's use was by permission. No finding is made as to the ultimate issue of permission, inasmuch as the trial court failed to find that either "position" rose to the level of fact.

Conclusions of law not supported by the findings of fact will not be upheld. *Dartmouth Savings Bank* v. *F.O.S. Associates*, 145 Vt. 62, 66, 486 A.2d 623, 625 (1984). As Finding 25, being cast in the alternative, cannot support the conclusion that permission was given, the conclusion itself must fail as a matter of law.

## V.

Even were we to find that the conclusion as to permissive use of the easement was supported by Finding 25, the judgment must be reversed.

In Section III above, we reiterated the elements necessary to prove a prescriptive easement: open, notorious, hostile and continuous use over a fifteen-year period in which the fee owner has acquiesced. *Russell* v. *Pare*, 132 Vt. at 401, 321 A.2d at 81. In its findings, the trial court found as fact that the area in dispute had been used by vehicles of all descriptions in a manner consistent with the claimed user since the 1920s. The record showed that this use continued uninterrupted, and in a manner substantially unchanged since then but for the modernization of the vehicles using the area, until the barrier was erected in 1984. On the facts as found by the court, this comprises "open, notorious and continuous" use of defendant's property.

The general rule is that open and notorious use will be presumed to be adverse. *Barber* v. *Bailey*, 86 Vt. at 223, 84 A. at 611.

The trial court noted in its order (without further comment), and the defendant argues, that not this presumption but the presumption that public use of private property is by permission should apply. See *Begin* v. *Barone*, 124 Vt. 421, 423, 207 A.2d 252, 254 (1965); *Gore* v. *Blanchard*, 96 Vt. at 241, 118 A. at 893. This case does not, however, involve the kind of generalized public use envisioned in *Begin* or *Gore*, and both those cases note that the "public use" presumption is an exception to the general rule, to be used only in appropriate circumstances.[2] *Begin* v. *Barone*, 124 Vt. at 423, 207 A.2d at 254; *Gore* v. *Blanchard*, 96 Vt. at 241, 118 A. at 893. A review of the record reveals no contradictory evidence.

■ In order to prove the final element of its claim, the passing of the fifteen-year period set forth at 12 V.S.A. § 501, plaintiff proved the chain of title of its property from plaintiff's predecessors in interest from 1929 through the present, and showed through uncontradicted testimony that those predecessors had also made use of the gravel area now claimed by plaintiff as an easement by prescription. Under the doctrine of "tacking," plaintiff may add those previous periods of use to its own upon a showing that it has "assume[d] the use of the easement directly from his predecessor as a part of his receipt of the dominant estate." *Russell* v. *Pare*, 132 Vt. at 405, 321 A.2d at 83. The record supports the conclusion that adverse use began no later than 1929, with the result that the prescriptive period expired in 1944.[3]

---

[2] Defendant's reliance on *Plimpton* v. *Converse*, 44 Vt. 158 (1871), is misplaced. That case, which also enunciated the "public use" exception to the general presumption of adversity, involved one shopholder's claim of prescriptive easement as to passage, both for himself and his customers, over a neighboring shopholder's land. There, the Court found that because the second shopholder had already opened his land to general passage by his own customers, there was a presumption of permission to all public users, including the first shopholder and his customers. *Id.* at 164-65. Those facts are distinguishable from the instant case, in which no showing was made that defendant had "thrown open" its land to general passage.

[3] Defendant contends that the prescriptive period could only have commenced, at the earliest, in 1945 when the main witness as to use (Ervin Clough, former president of plaintiff) acquired an ownership interest in the plaintiff corporation. There is no requirement, however, that a witness must have an ownership or other managerial interest in the subject matter of the litigation in order to be competent to testify to something otherwise within his knowledge, as was the case here.

"When the proponent of a prescriptive acquisition produces facts sufficient to support the claim, the burden shifts to the defendants to show such possession or intrusion as would defeat the prescriptive claim." *Id.* As discussed in Section IV, above, there was testimony to the effect that Peter Oot, a former president of defendant corporation, gave plaintiff permission to use the land in dispute in the manner now claimed as a prescriptive easement. Even were this testimony to be accepted, as it is within the trial court's discretion to do, such permission could not have been given earlier than 1956, when defendant purchased the land — twelve years after the fifteen-year prescriptive period had expired. Our law is clear that " '[o]nce [a] grant is established by adverse use, the subsequent granting of permission will not serve to divest or defeat the claim.' " *Moran* v. *Byrne,* 149 Vt. 353, 355, 543 A.2d 262, 263 (1988) (quoting *Zuanich* v. *Quero,* 135 Vt. 322, 325, 376 A.2d 763, 765 (1977)).

The record supports a conclusion that the claimed user was made in an open, notorious, continuous and adverse manner from 1929 until at least 1956.

*Reversed and remanded with directions to enter judgment in favor of plaintiff.*