Town of Springfield *v.* Maurice A. Newton et als.

(50 A2d 605)

Special Term at Rutland, November, 1946.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed January 7, 1947.

*Herbert H. Blanchard* and *Harold I. O'Brien* for the petitioner.

*Clifton G. Parker* for the petitionee.

*Ernest F. Berry* and *Barber & Barber* for the intervening petitionees.

MOULTON, C. J. This is a petition for a writ of prohibition, by which it is sought to restrain the County Road Commissioners for the County of Windsor (hereinafter called the respondents) from enforcing an order made by them requiring the Town of Springfield, in that County, (hereinafter called the petitioner) to make certain designated repairs upon a bridge situated within the limits of the Town.

The writ is sought upon the ground that the bridge is not a public highway or a part of a public highway, never having been laid out under authority of law, or dedicated or accepted as such, and that therefore the respondents were without jurisdiction or

authority to entertain or hear any complaint, or to make any legal or binding order upon the petitioner in connection therewith, or to take any steps for the enforcement of such order if the petitioner should fail to comply with it. Upon presentation of the petition to a Justice of this Court a stay of all proceedings respecting the matters alleged was granted pending the final disposition of the controversy. The respondents have filed an answer. Harry P. Fitch, Nora S. Fitch, Ervin C. Balch and Hugh H. Balch, all citizens and taxpayers of Springfield (hereinafter called the intervenors) who were the complainants to the respondents, have, upon their motion, been permitted to enter as parties respondent, and have filed an answer. The cause is before us upon the report of a Commissioner, who has been appointed to find and report the facts in issue.

The proceedings which resulted in the order made by the respondents were those prescribed by statute. As provided by P. L. 4945 the intervenors gave notice of the insufficiency of the bridge and the nature of such insufficiency to the selectmen of the petitioner; and after a neglect by the petitioner to commence work upon the bridge for thirty-six hours, filed a complaint with the respondents, signed and sworn to, with security for costs. In accordance with P. L. 4946, 4947 and 4948 the respondents, after giving the required notice, heard the parties, examined the bridge, and filed their report that the public good required that certain specified repairs should be made thereon, allocating the sum of five hundred dollars for the purpose, with an order that the petitioner commence work upon them within a designated time. The hearing was held over the protest and objection by the petitioner that the respondents were without authority or jurisdiction in the matter, for the same reason as that set forth in the petition.

The petition alleges that unless prohibited by an order of this Court the respondents, in the event that the repairs shall not be made, will continue to exercise jurisdiction, will appoint an agent to expend the amount allocated by them, will file a certificate in the office of the County clerk of Windsor County, and cause a judgment for this sum·to be entered against the petitioner and execution issued thereon, as provided by P. L. 4949 and 4950.

The function of a writ of prohibition is to prevent the unlawful assumption of jurisdiction by a tribunal either of the

entire subject matter or of something collateral or incidental thereto, contrary to common law or statutory provisions. *Leonard* v. *Willcox,* 101 Vt 195, 203, 142 A 762, and cas. cit. The writ lies not only to courts *eo . nomine* but also to inferior ministerial bodies possessing incidentally judicial powers, such as are known as quasi judicial functions. *In Re First Congressional District,* 295 Pa 1, 144 A 735, 739; 43 Am Jur Tit "Prohibition," p. 153, para. 14, and cas. cit. In the proceedings to order repairs upon defective highways and bridges under the sections of our Statutes above referred to the County Road Commissioners constitute such an inferior tribunal having certain quasi judicial power, and therefore the writ may issue against them to prevent an assumption of jurisdiction not conferred by law. *Shrewsbury* v. *Davis,* 101 Vt 181, 187, 142 A 91. In this case the status of the bridge in question as a public highway is the essential jurisdictional element. *Shrewsbury* v. *Davis, supra.*

█ A highway, which term includes a bridge and its approaches, (P. L. 13; *Cook* v. *Barton,* 63 Vt 566, 568, 22 A 663), is established either by regular statutory proceedings, or by dedication and acceptance. *Hyde, Admr.* v. *Jamaica,* 27 Vt 443, 454. In the case just cited it is intimated that the establishment may also be by prescription, but it is said in *Gore* v. *Blanchard,* 96 Vt 234, 241, 118 A 888, 891, that: "Inasmuch as the public cannot take by grant, prescription, which presupposes a grant, in its strict sense seems to have no application to highways." In the present case there is nothing to show that the bridge was ever laid out as a highway by the authority of statute; in fact, it appears that all the available surveys and records are silent upon the subject. But the legality of its establishment is not disproved by the absence of a record, for it may have acquired its status by dedication and acceptance, as the defendants and the intervenors claim to be the case in this instance. *Judd* v. *Challoux,* 114 Vt 1, 3, 39 A2d 357; *Brown* v. *Swanton,* 69 Vt 53, 56, 37 A 280; *Page* v. *Weathersfield,* 13 Vt 424, 429.

█ A dedication of a road as a highway is the setting apart of the land for public use, and may be either express or implied from the acts of the owner. It need not be evidenced by any writing or by any form of words, but may be shown by evidence of the owner's conduct, provided his intention, which is the essen-

44

tial element, clearly appears. *Gore* v. *Blanchard,* 93 Vt 234, 239, 118 A 888; *Littlefield* v. *Hubbard,* 124 Me 299, 128 A 285, 287, 38 ALR 1306. It is not, like a grant, to be presumed from length of time alone, but may, if the act of dedication be unequivocal, take place immediately. *State* v. *Wilkinson,* 2 Vt 480, 486, 21 Am Dec 560. However, a long acquiescence in user by the public, if the attending circumstances are such as clearly to indicate an intent by the owner to devote the land to public use as a highway, is evidence upon which a dedication may be predicated. *Gore* v. *Blanchard, supra.* The allowance by the owner of repairs at public expense is a circumstance strongly tending to show such an intention. *Folsom* v. *Underhill,* 36 Vt 580, 586. Where the evidence is conflicting, the question of dedication is one of fact. *Folsom* v. *Underhill, supra,* at p. 587; *District of Columbia* v. *Robinson,* 180 US 92, 93, 21 S Ct 283, 45 L ed 440, 443.

 But neither the mere fact of a dedication of land to the public use as a highway, no matter how clearly and unequivocally it may be proved, nor the use of it by the public for travel, is sufficient to impose upon the town in which it is situated the obligation to keep it in repair, unless it has been accepted and adopted by the proper town authorities as a highway. *Way* v. *Fellows,* 91 Vt 326, 329, 100 A 682. "A town or other municipality cannot have forced upon it as highways whatever ways and paths individuals may open and lay out for the enhancement of their private property or for other reasons." *Bacon* v. *Boston and Maine R. R.,* 83 Vt 421, 431, 76 A 128, 136; *Clarendon* v. *Rutland R. R. Co.,* 75 Vt 6, 9, 52 A 1057; *Tower* v. *Rutland,* 56 Vt 28, 31; *Folsom* v. *Underhill, supra,* at p. 587; *Hyde, Admr.,* v. *Jamaica, supra; Bailey v. Fairfield,* Brayt, 128.

 Here, as in the case of a dedication, the existence of intention is vital, for there cannot be an acceptance without it. And where there is a conflict of evidence, it becomes an issue of fact. The use of a road for public travel, however extensive it may be, is not, standing alone, sufficient to show an acceptance of it as a highway, and an adoption of it as such. *Tower* v. *Rutland, supra; Bailey* v. *Fairfield, supra.* Neither is a mere consent of the town authorities to such use, or their knowledge that one travelling thereon supposes it to be a highway. *Blodgett* v. *Royalton,* 14 Vt 288, 295. But such acceptance and adoption may be

inferred from evidence that the town acting through the proper officials has voluntarily assumed the burden of maintaining the road and keeping it in repair, and where it is found that labor or money has been expended and repairs made thereon the conclusion is justified that the town has recognized the public character of the road and that it is a highway. *Brown* v. *Swanton,* 69 Vt 53, 56, 37 A 280; *Whitney* v. *Essex,* 42 Vt 520, 525; *Folsom* v. *Underhill,* 36 Vt 580, 588; *Ladd* v. *Waterbury,* 34 Vt 426, 427; *Page* v. *Weathersfield,* 13 Vt 424, 429; *State* v. *Wilkinson,* 2 Vt 480, 487, 21 Am Dec 560.

The Commissioner's report states that the bridge crosses a stream known as Valley Brook which closely parallels the westerly side of Valley Street, a highway within the limits of the Village of Springfield, and extends from that street to the premises owned and occupied by the intervenors, upon which, as partners, they carry on a business under the name of the Balch Trucking Company, and a gasoline filling station. It is the only feasible means of access to their land, and serves no other property than theirs. The village has protected the street from injury by high water by the installation of a retaining wall of stone and cement, between the travelled portion of the highway and the brook, and the easterly end of the bridge rests upon this wall. At this point the brook is about ten feet below the surface of the street, and the bridge has a span of twenty feet. The brook is upon the intervenors' land, which abuts upon the westerly side of Valley Street.

The bridge was built some time before 1898. It is used by the eleven trucks operated by the Balch Trucking Company and by farmers who bring their milk to the company's place of business to be transported elsewhere. For the past thirty years it has been a practically daily occurrence for automobiles, driven by persons who have had no business to take them to the intervenor's premises, to cross the bridge, turn around and return to Valley Street. The number of cars so using the bridge has been as many as twenty-five a day. The intervenors have made no objection to this practice, and have never put up any sign notifying the public that the bridge is private property or warning against trespass.

On several occasions the bridge has been repaired by the Road Commissioner of the Town of Springfield, and by the Supervisor of Streets of the Village, without request from the intervenors or

expense to them. It has been planked by the Road Commissioner, following a message from the father of one of the intervenors, then the owner of the property, who has twice planked it himself, the last time being in 1920. In 1914 or 1915 the then Road Commissioner removed the original wooden stringers, replaced them with steel beams and put on a new 3 inch plank flooring and a railing. The beams had previously been a part of another bridge on Main Street in the village and were brought from a storehouse where bridge supplies were kept. At this time the bridge was raised about one foot, and the easterly approach was graded so as to bring it nearly level with the surface of Valley Street. Nothing is found as to any authorization for the work by the selectmen. Sometime between 1917 and 1919, Alvin W. Lawrence, who was then the Road Commissioner, ordered new hemlock planks placed on the bridge as flooring, and superintended the work. Sand, gravel and planks were brought to the place by a town or village truck. The planks were taken from the town barn where such flooring was stored. Mr. Lawrence received no written authorization for the work, but was verbally instructed to do it by one of the selectmen. Subsequently he put in a bill for the material used, and the Selectmen issued an order to him for its payment. No written authorization for the repair of any bridge was given him by the selectmen during his term of office. The town reports and audits covering the period in which the various repairs were made upon this bridge do not mention the bridge by name or description, but contain many records of work done upon bridges not identified.

In 1935 the retaining wall, which had fallen into disrepair, was reinforced by the village for the purpose of protecting Valley Street, and incidentally of securing the steel girders of the bridge, which were in danger of falling into the brook. In the course of the work the girders were embedded in cement, the westerly abutment of the bridge, which was in bad condition, was entirely relaid and faced with cement, and the westerly approach was graded. All this was done under the direction of the Supervisor of Streets of the Village. For ten years prior to 1942, a village plow kept the bridge clear of snow in winter and no charge for this service was made against the intervenors.

At one time certain work was done by contractors employed

by the village in connection with the installation of a water main across the brook at the site of the bridge, during which the bridge was strengthened to permit the passage of heavy material over it, and a part of the flooring was taken up and later replaced.

After detailing the above facts the report concludes with the statement that the Commissioner finds that the bridge is a highway bridge, which the town is bound to repair.

■ The existence of a public highway is a mixed question of law and fact. Whether the essential facts exist is for the trier of fact; whether the facts found constitute a highway is for the Court. See *Smith* v. *Vermont Marble Co.,* 99 Vt 384, 396, 133 A 355; *Trask* v. *Karrick,* 94 Vt 70, 74, 108 A 846. There can be no doubt that the finding above mentioned contains a conclusion of law, and if it is not supported by the facts elsewhere found it is to be disregarded. *Dieter* v. *Scott,* 110 Vt 376, 383, 9 A2d 95, and· cas. cit. There is no specific mention of a dedication, and an acceptance of the bridge as a public highway, but these findings are necessarily implied from the ultimate finding and have been so treated by all the parties. The claim of the petitioner is, in brief, that there is nothing in the report to show a dedication, a public use, or an acceptance and adoption by the Town, according to law.

The important question here is not whether the bridge has been dedicated to the public. It may be that the facts reported are sufficient to support an inference to this effect, but we do not decide the point. The controlling issue is whether the necessary acceptance and adoption are made to appear.

■ As we have seen dedication alone is not enough to establish a road as a highway; there must be an acceptance and adoption by the proper authorities of the town. The Selectmen of the town are the officials vested with the power to lay out, alter and discontinue highways, as the convenience of the inhabitants and the public good may require. P. L. 4741. This has been the law during all the time material here. See G. L. 4388 (1917); P. S. 3808 (1906). They are also the proper town authorities by whose acts the acceptance and adoption of a dedicated road as a highway must be manifested. *Folsom* v. *Underhill,* 36 Vt 580, 588; *Hyde* v. *Jamaica,* 27 Vt 443, 455. Work done by the officers of an· incorporated village, unauthorized by the Selectmen, al-

48

though with their knowledge, is not a sufficient basis upon which to predicate an acceptance. See *Penniman* v. *St. Johnsbury,* 54 Vt 306, 308.

 A town highway commissioner has the duty of keeping the highways of the town in repair. P. L. 4881, formerly G. L. 4538, P. S. 3958. But this duty as defined by statute relates only to existing highways, and he has, of himself, no power, on behalf of the town to accept a dedication or adopt a travelled road as a highway. *Hyde* v. *Jamaica, supra,* at p. 456. If anything done by him is to have that result it must be because it has been authorized by the Selectmen in the manner provided by statute, and so is done as their legal representative and agent.

 By P. L. 4879, as amended by No. 109, Acts 1937, which, so far as material is the same as G. L. 4536 and P. S. 3956, "the selectmen may authorize a road commissioner to have charge of and repair any bridge and its approaches not over twenty feet in the clear between abutments, and such authorization shall be in writing and recorded in the town clerk's office." If there were such a written authorization for repairs upon the bridge in question, and a record of it in the clerk's office, it would strongly tend to show that the work done by Mr. Lawrence as town road commissioner, or by his predecessors in office, was such as to constitute a recognition by the town that the structure was a highway. But unfortunately for the respondents and the intervenors this is not the case. They cannot rely upon a verbal instruction, given by one of the selectmen to Mr. Lawrence, even if it should appear that he had been empowered to bind the others in the matter. See *Goslant* v. *Calais,* 90 Vt 114, 123, 96 A 751; *Hunkins* v. *Johnson,* 45 Vt 131, 136. Neither can the subsequent issuance of an order for payment of materials used by Mr. Lawrence in making the repairs, and the custom to give him verbal instead of written authorization with regard to his work as town Road Commissioner, override the mandatory provisions of the statute that authority from the Selectmen to such commissioner for the repair of a bridge having the dimension of the one here in issue shall be in writing and placed upon record. Since there was no compliance with the enactment in this respect the Road Commissioner's acts were not the legal acts of the Selectmen and cannot have the effect of showing an acceptance and adoption of the bridge as a highway.

From what we have said it follows that the conclusion of the Commissioner that the bridge is a highway bridge is not supported by the facts elsewhere appearing in his report. We hold, therefore, that the respondents were without jurisdiction to order the repairs thereon, and cannot legally proceed to enforce their order. The writ of prohibition will issue in accordance with the prayer of the petition.

*It is ordered that a writ of prohibition issue, in the name of the State, directed to the respondents, prohibiting them from proceeding further in the matters set forth in the petition for said writ, without costs.*