2009 VT 102

**James W. AUSTIN, Joann Flanagan, John Flanagan, Kirk Flanagan, Dawn Flanagan and Christopher Austin v. TOWN OF MIDDLESEX**

[987 A.2d 307]

No. 08-428

¶ 1. October 27, 2009. The Town of Middlesex appeals a decision by the Washington Superior Court granting a declaratory judgment in favor of plaintiff landowners and co-tenants. In the underlying quiet-title action, plaintiffs sought to show that no "ancient road," referred to

as Town Highway 15 (T.H. 15), had ever formally existed on their land. We agree and affirm, finding that the Town has failed to prove the official establishment of a town road.

¶ 2. Plaintiffs are co-owners and/or co-tenants of a 270-acre parcel of land in Middlesex, Vermont. Joann Flanagan purchased the land in 1988, and she and James Austin currently make their home there. The other plaintiffs are their adult children who have remainder interests in the land. After purchasing the land, plaintiffs learned that the Town asserted the continuing existence of T.H. 15 and claimed that it crossed through plaintiffs' property between their home and out-buildings. Plaintiffs currently use a section of this road as a portion of their private driveway, and it also serves as a private road that accesses a duly permitted subdivision created on plaintiffs' land in 1999. The Town does not dispute that the road has remained without improvement or maintenance for at least the past three decades.

¶ 3. Maps of Middlesex dating back more than 150 years indicate the location of a road running the same general course as that claimed by the Town as T.H. 15. It is first referenced in 1833 in Book B (1821-1851) of the Middlesex Town Land Records on a page recording the actions of the Town, by and through its selectmen and/or town clerk, with regard to three different roads. The entry describing the road that sparked this litigation provides:

> Record of a Road in the North part of Middlesex. Beginning as follows [describing the course and length of the road] . . . . The above is a true Record as surveyed Middlesex July 6, 1833 by Eli Stone Surveyor The above described Road begins at a stake & stones on a road this day laid and surveyed through Mr Flints

to Mr Roots land from George Paddlefords Road about forty rods Middlesex July 6, 1833 per me Eli Stone Recorded by me Horace Holden T Clerk

The two previous entries on the same page refer to roads surveyed in 1831. The recording of each of these roads concludes, "The above road laid out by us three rods wide and surveyed in the center by and under our direction. . . . John Vincent Elijah Holden Selectmen." Following the second entry is the statement, "The above surveys recorded by me Horace Holden Town Clerk." All three entries appear to be written by the same hand.

¶ 4. Before trial, the parties filed cross-motions for summary judgment and a hearing was held. Ruling in plaintiffs' favor, the court reasoned that the Town had failed to provide sufficient evidence to prove it had "ever successfully established a public road." The Town filed a motion to reconsider and included additional evidence from the Middlesex town records. The trial court subsequently denied that motion.

¶ 5. On appeal, the Town's only claim is that the 1833 survey,[1] along with other documents,[2] provide sufficient context "to

---

[1] The Town's appeal also relies upon a later reference to T.H. 15 in an 1879 survey "under the direction of the Selectmen of the Town of Middlesex" in the Middlesex town records. However, the Town concedes that this reference does not satisfy the requirements of the law applicable in 1879 and was likely just a resurvey of the road laid out in 1833. See *infra*, ¶ 7 (road layout not valid unless actions comply with applicable statute). We need not consider this facet of the Town's argument.

[2] On appeal, the Town attempts to rely on various historical maps admitted in the trial court to show that T.H. 15 was an

justify the conclusion that the road in question is a[n official] town highway." It does not claim, nor is there any claim in the record, that any of plaintiffs' predecessors-in-title voluntarily granted the Town a right-of-way along T.H. 15. Thus, the only legal basis on which the Town could have acquired the right-of-way and established T.H. 15 is by condemnation or a confiscatory taking under the applicable laws in effect in 1833.

¶ 6. When we review a grant of summary judgment, this Court applies the same standard of review as applied by the trial court. *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 5, 185 Vt. 129, 969 A.2d 54. Summary judgment is appropriate where there is no genuine issue of material fact and any party is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c)(3). As this appeal raises no contested questions of fact, we limit our review to pure questions of law. See *Delta Psi*, 2008 VT 129, ¶ 5.

¶ 7. "The procedure to be followed in laying out . . . a highway is . . . statutory and the method prescribed must be substantially complied with or the proceedings will be void." *In re Mattison*, 120 Vt. 459, 462, 144 A.2d 778, 780 (1958) (citing *Town of Barton v. Town of Sutton*, 93 Vt. 102, 103, 106 A. 583, 584 (1919)); see *In re Town Highway No. 20 of Town of Georgia*, 2003 VT 76, ¶¶ 6-7, 175 Vt. 626, 834 A.2d 17 (mem.); *In re Bill*, 168 Vt. 439, 442, 724 A.2d 444, 446 (1998). When interpreting any law, this Court begins by

official town road as early as 1858. While we make no ruling on the admissibility of maps generally — especially given that here the trial court did not rely on the maps for its conclusion — we pause to note that the court did not state whether the maps were admitted as proof of the *location* of the road or proof of the *official creation* of the road. It seems unlikely that they would be reliable evidence to establish the latter.

examining the plain language of the statute in order to give effect to the legislative intent. See *Delta Psi*, 2008 VT 129, ¶ 7. Our prior interpretations of a statute aid us in determining the legislative intent. See *Lane v. Town of Grafton*, 166 Vt. 148, 152, 689 A.2d 455, 457 (1997).

¶ 8. In 1833, the year in which the Town argues T.H. 15 was laid out, Vermont had three legal requirements for the official creation of a road. First, "[e]very highway or road [to] be laid out or opened [had to] be actually surveyed, and a survey thereof made out, entered and recorded, in the town clerk's office, where such highway or road lies." Laws of Vermont, 1824, Ch. LIII, No. 1, § 1. Second, the road had to be officially "laid out" through a formal act by the selectboard or another official body and duly recorded. See *Young v. Town of Wheelock*, 18 Vt. 493, 495 (1846) ("The evidence, that a road has thus been laid out and opened for travel, is usually to be found on the records of the town. The survey, the act of the selectmen, or commissioners, together with the certificate, that the road has been opened, are required to be recorded."); *Patchin v. Doolittle*, 3 Vt. 457, 459 (1831) (road cannot be opened without being "laid out"). Third, the selectboard had to issue a "certificate of opening" attesting that the town had in fact physically created and put into public use the road as surveyed and "laid out." Laws of Vermont, 1824, Ch. LIII, No. 10, § 2 ("[W]henever the selectmen of any town shall open any road, heretofore, or hereafter, laid out, they shall cause a certificate thereof, signed by them, or a major part of them, to be forthwith recorded in the town clerk's office . . . ."); see *Kelly v. Town of Barnard*, 155 Vt. 296, 302-03, 583 A.2d 614, 618 (1990); *Young*, 18 Vt. at 495; *Patchin*, 3 Vt. at 458 (A road is "opened by the select men, in the way pointed out by statute; to wit, by their causing a certificate, that it is thus opened, to be recorded in the town clerk's office.").

632

¶ 9. It is clear from the town records quoted above and from the evidence submitted at trial that the Town could not show any official act by the selectmen "laying out" T.H. 15 in 1833 or otherwise legally establishing the road at any subsequent point.[3] Apparently the road described as T.H. 15 was surveyed and recorded in 1833, but there is no proof that the selectboard officially authorized that road as a town highway. Indeed, on the evidence provided, it does not appear that the selectboard acted at all in 1833 with regard to the described road. Rather, the entry the Town relies upon only seems to record a road survey by one Eli Stone and provides no evidence of official sanction. In contrast to the survey recording the course and direction of T.H. 15, the two prior surveys that share the same page in the town records clearly state that those roads were "laid out by us [the selectmen] . . . and surveyed . . . under our direction." Such entries demonstrate that the selectmen knew the legal requirements for formally establishing a town road, and there is no proof that such requirements were followed in the entry for the road in dispute. Equally important, the same town clerk recorded all three entries on that page of the town records, and only the record for the disputed road lacks formal recognition by the selectboard.[4]

¶ 10. The Town argues that the only legal requirements for establishing a road in 1833 were a recording of the survey and a certificate of opening, and that the certificate requirement was repealed by the Legislature in 2000.[5] This argument, however, ignores the third and vital requirement that the road be formally "laid out" and claimed by the municipality. As our prior case law shows, the selectboard of the Town had to take this formal action. *Young*, 18 Vt. at 495; *Patchin*, 3 Vt. at 459. Moreover, the statutes in effect in 1833 regularly referred to "laying out" the road as a formal act by the selectboard. See, e.g., Laws of Vermont, 1824, Ch. LIII, No. 1, § 1 ("selectmen . . . shall have power . . . to lay out new highways"); *id.* No. 9, § 3 (highway "laid out" and "established" must be opened "within one year from the time it is established"). The provision requiring a duly recorded survey explicitly distinguishes that requirement from the road "lay out." *Id.*, No. 1, § 1 ("[E]very highway or road which shall in future be laid out or opened, shall be actually surveyed . . . ."). Without proof that the road was officially "laid out," the Town lacks evidence that it substantially complied with the legal requirements in effect in 1833 and thus cannot successfully claim that T.H. 15 is a town highway.[6]

*Affirmed.*

---

[3] As is noted *supra*, ¶ 5 n.1, the road *is* officially "laid out" in the 1879 survey, but did not conform to the additional legal requirements applicable at that time.

[4] On appeal, the Town provided summary evidence regarding alleged recording discrepancies in the Middlesex town records between 1801 and 1867. Though the Town had a prior opportunity to present this evidence at trial, it was only brought before the trial court on a motion for reconsideration, which was denied. We will not address such evidence here.

---

[5] See 1999, No. 156 (Adj. Sess.), § 21(2) (repealing certificate of completion requirement); see also *id.* § 25, 19 V.S.A. § 717(a) ("The lack of a certificate of completion of a highway shall not alone constitute conclusive evidence that a highway is not public.").

[6] We will not speculate as to the legal effect of Stone's 1833 survey: whether it created a private road or was an initial step in establishing a public easement.