NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 90

No. 2014-339

| | |
|---|---|
| Bruce Kirkland and Gordon Kirkland | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| James Kolodziej and Barbara Kolodziej | March Term, 2015 |

John P. Wesley, J.

George Anthes and Thomas W. Costello of Costello, Valente & Gentry, PC, Brattleboro, for
  Plaintiffs-Appellees.

Amanda T. Rundle and Christopher M. Rundle of Rundle & Rundle, PLLC, Springfield, for
  Defendants-Appellants.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **DOOLEY, J.** Defendants James and Barbara Kolodziej appeal the decision of the Windham Superior Court granting declaratory judgment in favor of plaintiffs Bruce and Gordon Kirkland on plaintiffs' action to quiet title in a road traversing defendants' land and providing access to plaintiffs' land. Following a bench trial, the court found that the road had been established formally as a public highway. We conclude that plaintiffs provided insufficient evidence to prove that a public highway had been established in the segment of the road at issue, and reverse.

¶ 2. The parties to this appeal are neighboring landowners in Rockingham, Vermont. Their dispute centers on a segment of Petty Road that crosses defendants' property and is used

by plaintiffs to access their property.[1] Petty Road, as it exists today and when this dispute began, runs in an easterly direction from its intersection with Gowing Road and northeast to the Springfield town line.[2] Plaintiffs assert that the entire length of Petty Road was dedicated as a public highway in the early 1800s, while defendants contend that only the eastern segment was so dedicated. We agree with defendants and hold that plaintiffs have not proven that the western segment of Petty Road is a public highway.

¶ 3. Except where otherwise noted, the following background facts are not in dispute. In 1978, plaintiffs acquired sixty acres in Rockingham. The deed noted that the property "includes the Petty Road." A portion of the boundary, as repeated from an earlier 1962 deed, is described as follows:

> Beginning at a stonewall intersection on the Easterly right-of-way limit of the so-called Gill Gowing or Mason Road and on the Rockingham-Springfield Town Line, said stonewall intersection being the Northwest corner of the parcel being described. . . . Thence Southwesterly . . . along an extension of a stone wall . . . this line being the Southeasterly right-of-way limit of the so-called "Petty Road" . . . .

¶ 4. In 1983, defendants acquired approximately 23.5 acres abutting plaintiffs' parcel to the west. The deed referenced a survey that depicts Gowing Road as the northwesterly boundary and shows "the approximate location of Petty Road purported to be a discontinued Pent Road"[3] crossing defendants' property from its intersection with Gowing Road to the west and continuing east to plaintiffs' property.

---

[1] Plaintiffs do not have an easement over defendants' land. Thus, their ability to access their property by road, at least from the westerly direction, depends upon Petty Road being a public road.

[2] The description in the text makes it easier to understand the dispute. As some of the deed descriptions reflect, Petty Road actually runs in a southeasterly direction, bends thereafter to the northeast, and crosses into the Town of Springfield.

[3] A pent road is a public road enclosed by gates.

¶ 5. Plaintiffs live out of state and visit their property for recreational purposes several times each year. With the exception of a small camper, the property remains unimproved. Until the events that prompted this lawsuit, plaintiffs gained access to their property by traveling north along Gowing Road and then east along a wood road—the segment of Petty Road at issue here— through defendants' property and onto their own land. On the ground, the segment of Petty Road running from Gowing Road to plaintiffs' property is plainly marked and lined for much of the way with old stone walls. In recent years, the road has served as the sole means of access to other properties to the east of plaintiffs' land.

¶ 6. In 2006, defendants took steps toward constructing a dwelling on the property abutting plaintiffs' parcel to the west. Acting under the assumption that the segment of Petty Road running through their property was a private way, defendants sought to limit public access to the road. Defendants relied on the language in their deed describing the road as "a discontinued pent road" and the lack of any official town records indicating otherwise. Defendants applied for a permit to construct a new driveway to access the proposed house site. In doing so, they indicated their intention to remove the existing driveway—the segment of Petty Road running through their property and used by plaintiffs. In 2007, the selectboard granted defendants' permit. The permit made no reference to the existing driveway and did not require that the existing driveway be eliminated for construction of the new access.

¶ 7. While constructing the new driveway, defendants deposited large stumps and other debris along Petty Road, several hundred feet from its intersection with Gowing Road. This debris rendered that section of Petty Road impassible. When plaintiffs visited their property in the fall of 2007, before even reaching Petty Road, they encountered a large tree trunk lying

3

across Gowing Road, just south of its intersection with Petty Road, completely obstructing vehicular travel.[4]

¶ 8. Since 2007, plaintiffs have gained permission to access their land through neighboring property to the north.[5] Currently, deferred maintenance along Gowing Road to the north of its intersection with Petty Road has made the road virtually impassible by the average vehicle and therefore provides plaintiffs no practical access to the northwestern corner of their property. Moreover, the northwestern corner is comprised of a steep ledge, making construction of a road into that portion of the property prohibitively expensive.

¶ 9. Plaintiffs brought an action in the trial court seeking to quiet title to Petty Road, enjoin defendants from obstructing Gowing Road, and recover damages for nuisance against defendants for obstructing plaintiffs' access. The parties filed cross-motions for summary judgment, which the trial court denied in a February 28, 2014 order. With respect to the status of Petty Road, the court stated:

> [T]here is evidence that the road was established prior to 1806, even if formalities were not observed; that the portion in question was discontinued and reestablished as a pent road in 1842 and 1843; and that the disputed portion has been in public use continuously until Defendants obstructed it. This sequence of events, if supported by a preponderance of the evidence, would justify the conclusion that Plaintiffs' predecessors and the public had acquired rights by dedication and acquiescence to use the road and traverse the land now owned by Defendants.

---

[4] This blockage was insignificant to defendants because they had built their new driveway off Gowing Road south of the downed tree. Plaintiffs claimed that defendants intentionally blocked passage along Gowing Road, but the trial court found it likely that the tree fell naturally. In any event, this point was not raised on appeal, and we need not consider it. Because Gowing Road is a class 4 town highway, the town assumes no responsibility for its maintenance.

[5] The trial court found that the abutting landowner, whose property plaintiffs have been traversing to obtain temporary access, was unwilling to grant plaintiffs an access easement. Defendants dispute this finding. The issue is merely tangential to this appeal.

4

The court also concluded that a factual question remained as to who was responsible for placing the materials that obstructed Gowing Road.

¶ 10. During a three-day bench trial, the court took evidence on the status of Petty Road and made the following findings of fact with respect to the road's historical origins. Present-day Petty Road traverses what were designated historically as Lots 4, 5, and 6 of Range 1 in the Town of Rockingham—the Dutton, Petty, and Gleason lots, respectively. In 1821, the selectmen laid out the easternmost 2500 feet of Petty Road, running from the eastern edge of Lot 5 and crossing all of Lot 6 before reaching the Springfield town line. Defendants do not dispute that the eastern segment has been in continuous use as a public highway since its dedication. The dispute here centers on the segment of Petty Road that extends west to its intersection with Gowing Road near the western edge of Lot 4. Petty Road, as laid out in 1821, was described as extending from "the road that leads from Stephen Dutton's to Solomon Petty's" to the Springfield town line. Plaintiffs' expert surveyor testified that the road referenced in the above description likely was the disputed western segment of Petty Road. The court acknowledged that "neither party has located a survey, or other recording of proceedings to lay out the road" but stated that it was "likely that [Petty Road] had been previously legally acknowledged as a town road."



5

¶ 11.    An 1825 conveyance of land in the southern part of Lot 5 described a portion of the boundary as "beginning on the east side of [said] lot on the south side of the road that leads from Stephen Dutton's to Springfield by the land of Thadeous Gleason" and continuing "on said road as it is now traveled on the north side of the aforesaid Solomon Petty's house." According to the court, this description strongly implies the recognition of Petty Road as a public highway along its entire length, including the disputed western segment. Similar references are found in conveyances in 1826, 1834, 1835, and 1841.

¶ 12.    On November 16, 1842, the selectboard granted a petition to "discontinue[] so much of the road leading from Bartons Mills through the Petty farm so called to Springfield line . . . [b]eginning at the junction of said road with the Mason road so called running and through the Petty farm to Springfield line." A few months later, on March 4, 1843, the selectboard altered the resolution adopted the previous November and established "a pent road" over the previously discontinued road "beginning at the junction of the old road that leads from Bartonsville through the Petty farm so called to Springfield line with the Mason road so called." The resolution specifically referred to the location of the pent road as "along the survey of the old road discontinued on the 16th of November last."

¶ 13.    Based upon deed descriptions and testimony from plaintiffs' expert surveyor, the trial court found that present-day Gowing Road, which marks the western terminus of Petty Road, is the Mason Road referred to in the historical documents. Although defendants' expert offered testimony of an alternate location for Mason Road, no additional evidence supported this hypothesis, and the court found the evidence in favor of Mason Road as the location of present-day Gowing Road "much stronger and more persuasive."

¶ 14.    Plaintiffs were unable to locate any earlier survey or description of the disputed western portion of Petty Road in any other resolution or recorded act of the selectboard. The only other testimony offered with respect to the existence of the pent road were various

6

descriptions of gates located along the road. As the trial court noted, "it is highly unlikely that [the gates] were all located in the easternmost 2,500 foot segment of Petty Road." Despite the lack of conclusive evidence, the court found "it likely that the western portion of the disputed road was laid out prior to 1821, and that the records of such official action were either never filed, misplaced, or lost."[6] The court further found that there was no evidence that the pent road reestablished in the 1843 resolution ever was discontinued.

¶ 15. The trial court therefore concluded that Petty Road is a public highway and granted plaintiffs' request for injunction requiring defendants to restore the road to its prior condition and refrain from impeding any public passage in the future.[7] With respect to Petty Road's status as a public highway, the court "discern[ed] no principled argument that the 1843 re-establishment of the 'pent road' was undertaken without the proper formalities" and found "no ambiguity in the Selectmen's intention to dedicate the length of Petty [R]oad to public use, along its then-existing course." The court further found that "the evidence also strongly supports the conclusion that at the time the parties here acquired their respective lands, Petty Road had long before achieved the status of a town way by acquiescence, notwithstanding any claimed irregularities in the procedures by which it was laid out." This appeal followed.

¶ 16. Defendants raise several issues on appeal. Primarily, defendants argue that the trial court erred in concluding that Petty Road is a public highway where it extends across their

---

[6] Although the court did not articulate this in its finding that the record may have been misplaced or lost, the Rockingham zoning administrator and chairwoman of the Ancient Roads Committee testified that restoration of the early town record had degraded the legibility of the books and resulted in at least one page being damaged or lost. Defendants presented unrebutted testimony that the one missing document did not pertain to Petty Road and that no other documents were missing. It is unclear how much significance, if any, the court placed on this scant evidence, particularly given that the court found it likely that the records were either never filed, misplaced, or lost. The court certainly left open the possibility that no record ever existed.

[7] The court denied plaintiffs' request for damages and attorney's fees, finding no evidence to support their claim that defendants acted in wanton disregard of plaintiffs' rights in blocking the road. Plaintiffs do not appeal this ruling.

property.  Defendants make several more specific claims, including that the court erred in finding that plaintiffs' property was landlocked; applying precedent relating to claims of adverse possession; shifting the burden to defendants to prove that Petty Road is private; finding that plaintiffs' neighbor refused to grant plaintiffs an access easement; and denying defendants' motion for judgment on the pleadings.  Because we hold that the court erred in finding that the western segment of Petty Road is a public highway, we need not address defendants' remaining claims, except to the extent that we address them incidentally in our analysis of the status of Petty Road.

¶ 17.  The determination of the existence of a public highway is a "mixed question of law and fact."  Town of Bethel v. Wellford, 2009 VT 100, ¶ 14, 186 Vt. 612, 987 A.2d 956 (mem.) (quoting Town of Springfield v. Newton, 115 Vt. 39, 47, 50 A.2d 605, 610 (1947)).  We defer to the trial court's findings of fact if, viewed in a light most favorable to the prevailing party, they are not clearly erroneous.  Id. ¶ 5.  We will not overturn the court's finding "merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding."  Id. (quoting Highgate Assocs., Ltd. v. Merryfield, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991)).  We will uphold the court's legal conclusions if they are reasonably supported by the findings, id., but our review of the law applied by the court is "nondeferential and plenary," id. ¶ 14.

¶ 18.  We have identified three possible methods for establishing a public road in Vermont: (1) statutory condemnation; (2) dedication and acceptance; and (3) prescriptive easement.  Okemo Mountain, Inc. v. Town of Ludlow Zoning Bd. of Adjustment, 164 Vt. 447, 454, 671 A.2d 1263, 1269 (1995) (recognizing establishment of public highway by statute or by dedication and acceptance); Newton, 115 Vt. at 43, 50 A.2d at 608 (recognizing possibility of establishing public highway by prescription but acknowledging contrary authority (citing Gore v. Blanchard, 96 Vt. 234, 241, 118 A. 888, 89 1 (1922), and Hyde v. Town of Jamaica, 27 Vt. 443,

8

454, 1855 WL 2490, at *7-8). The trial court found the road had been established through statutory condemnation, but it is not entirely clear which law it applied in concluding that the road otherwise had been established through "long acquiescence." The court's order on the parties' cross-motions for summary judgment, see supra, ¶ 9, strongly suggests it was considering the applicability of dedication and acceptance, yet the cases the court cites in the final order appealed here make this less clear. Defendants have construed the court's ruling as relying on the doctrine of prescription—although they call it adverse possession, a closely related but slightly different doctrine—and have made arguments to refute the application of that law. In an effort to comprehensively review the law related to establishing town highways and to consider all issues raised by defendants, we will address in turn each of the three methods argued by the parties—statutory condemnation, dedication and acceptance, and prescription.

## I. Statutory Condemnation

¶ 19. We first consider whether plaintiffs have proven that Petty Road was properly laid out as a public highway through statutory condemnation. The law in effect when the eastern segment of Petty Road was laid out provided three legal requirements for the creation of a road: (1) an official survey to be recorded in the town clerk's office; (2) a formal act by the selectboard; and (3) a certificate of opening.[8] Austin v. Town of Middlesex, 2009 VT 102, ¶ 8, 186 Vt. 629, 987 A.2d 307 (mem.) (citing Laws of Vermont, 1824). We have long held that these statutory requirements "must be substantially complied with or the proceedings will be void." Id. ¶ 7 (quoting In re Mattison, 120 Vt. 459, 462, 144 A.2d 778, 780 (1958)); see also Town of Barton v. Town of Sutton, 93 Vt. 102, 103, 106 A. 583, 584 (1919) ("The procedure to

---

[8] The requirement of a certificate of opening was added in 1820. See Kelly v. Town of Barnard, 155 Vt. 296, 302, 583 A.2d 614, 618 (1990). In this case, the trial court found that it was likely that the western segment of Petty Road was laid out sometime prior to the laying out of the eastern segment, which occurred in 1821. In the absence of a recorded certificate of opening, we presume that this requirement was not in effect when the road was laid out. Id. at 303, 583 A.2d at 618. As a result, we have not considered this third requirement in our analysis of this case.

be followed in laying out or discontinuing a highway is wholly statutory and the method prescribed must be substantially complied with or the proceedings will be void.").

¶ 20. In a related context, we have acknowledged that "the difficulty in determining whether abandoned roads still legally exist stems from inconsistent, and sometimes incomprehensible, town records dating back two centuries or more," Wellford, 2009 VT 100, ¶ 8 (quoting McAdams v. Town of Barnard, 2007 VT 61, ¶ 13, 182 Vt. 259, 936 A.2d 1310), but, as discussed in detail below, we consistently have required proof of such records when considering whether the town undertook the proper statutory formalities in laying out a road. See, e.g., Austin, 2009 VT 102, ¶ 9 (finding no public highway where there was no official act of selectboard in laying out highway); Kelly, 155 Vt. at 303-04, 583 A.2d at 618-19 (1990) (finding public highway because, even though no certificate of opening was found, road was surveyed and recorded and thus likely opened prior to passage of statute requiring certificate); Bacon v. Boston & Me. R.R., 83 Vt. 421, 432-34, 76 A. 128, 133-34 (1910) (finding no public highway where there was no certificate of completion).

¶ 21. It is undisputed that the recorded action of the selectboard established only the eastern segment of Petty Road as a public road. With respect to the western segment, there is no recorded survey covering that segment, no recorded act of the selectboard establishing that section as a public road, and no certificate of opening of that segment.

¶ 22. The trial court relied, to a greater or lesser degree, on three rationales to find that the western segment of Petty Road is a public highway despite the absence of all the statutory elements: (1) it found circumstantial evidence that the western segment had been laid out as a public road, primarily through deed references and public use of that segment, and found that the "[record] proof quite conceivably has been lost as a result of the passage of time[,] . . . hav[ing] been omitted from the records due to error at the outset, or on account of later misfiling, or because they were lost or misappropriated"; (2) it concluded that both segments of Petty Road

10

had been discontinued as a public highway in 1842 and reinstated in 1843 and that the act of reinstatement met the statutory requirements; and (3) the selectboard could extend the termination point of the public highway pursuant to 19 V.S.A. § 32. None of these rationales supports the trial court's ultimate conclusion that the western segment of Petty Road is a public highway.

¶ 23. We start with the trial court's conclusion that it could rely on circumstantial evidence to find that the selectboard properly laid out the western segment of Petty Road as a public highway. In evaluating this argument, it is important to understand that there was no circumstantial evidence that the records showing compliance with the statutory elements ever existed or any evidence explaining why they were not found in the town office. The court's discussion of the possible reasons for their absence was speculative. The court concluded that "quite conceivably" the records were lost because of the passage of time, noting various explanations for their absence. In its findings, the court found "it likely . . . that the records of such official action were either never filed, misplaced or lost." There was no evidence, however, that any of these alternatives occurred or that the records existed in the first instance. Furthermore, there is no evidence that the records, if they existed, complied with the statutory requirements.

¶ 24. Before evaluating this issue, we note a distinction between two types of circumstantial evidence that are often relied upon in statutory condemnation cases: circumstantial evidence showing that records of official action once existed and properly were recorded, and circumstantial evidence that a road was open to the public. All the evidence plaintiffs presented in this case, and all the evidence relied upon by the trial court, was of the latter type—evidence that the public used the western segment of Petty Road.

¶ 25. While we recognize our limited case law on the question, the decisions that exist directly conflict with the trial court's rationale. Our primary case, <u>Barber v. Vinton</u>, 82 Vt. 327,

73 A. 881 (1909), involves another statutory requirement—that of notice to the landowner over whose property the road will pass—but the holding applies broadly to all statutory condemnation elements. In Barber, the plaintiff alleged that the official record of the selectboard in laying out the road failed to show that she, as an affected landowner, received notice of the proceeding as required by statute. The selectboard relied upon a presumption of regularity of its actions, along with parol evidence that the plaintiff received notice and appeared at the hearing. We held that notice of a hearing on the necessity of laying out a road could not be presumed. But it is our other holding in Barber, on the use of parol evidence, that is important to this case.

¶ 26. In discussing parol evidence, we first laid out the statutory requirements, stating:

> The statute provides that the selectmen shall return the original petition, with a report of their doings thereon and of the manner of notifying the parties, with the survey of the road, to the town clerk's office, to be kept on file therein, and that their order laying out the road, and the survey, shall be recorded.

Id. at 333, 73 A. at 883. We then addressed the plaintiff's argument that the statute "was intended to provide for an official ascertainment and preservation of all the facts essential to the validity of the proceedings and the determination of the rights of those concerned, and that the enactment will fail of its purpose if it be held that defects may be supplied by parol evidence." Id. Relying upon a tax case that reached a holding similar to the plaintiff's argument, we agreed with the plaintiff and held that compliance with the statutory elements cannot be proved by parol evidence. Id.

¶ 27. We reached a similar result in another context in Bacon v. Boston & Maine Railroad. In that case, the plaintiffs failed to prove a record of the opening of a highway, the third necessary element as set out above. As in Barber, we addressed first the argument that there is a presumption of regularity in the action of the selectboard and that the presumption satisfies the plaintiffs' requirement to prove the third element of the statute. We rejected that argument, relying on the same tax case discussed in Barber, and held that "the rule cannot be so

12

construed as to permit the presumption here claimed, so construed as to alter the rule that the existence and contents of a record must be proved by the record, unless something is shown which prevents or excuses the production of the record." Id. at 435, 76 A. at 134 (citing Sherwin v. Bugbee, 17 Vt. 337, 340 (1845)). We reasoned that "the burden of showing that the crossing is a public highway was on the appellants under their petitions . . . and, if they relied on the record of the certificate in support of their contention, it was for them to show it." Id. at 433, 76 A. at 134. We explained that the official record "was the best evidence upon this point" and that without evidence of destruction or some other inaccessibility, it should have been produced. Id.

¶ 28.    Looking at Barber and Bacon together, we conclude that parol evidence may be admissible in the form of an actual action of the selectboard or surveyor if the proponent of the public nature of the road can show that the record of the action once existed but is no longer available. We do not believe that, under these cases, a court can find that a road is public unless the statutorily required records are shown to have existed. In this case, there is no evidence that such records existed.

¶ 29.    We emphasize that our holding here is consistent with our decision in Austin v. Town of Middlesex, which we cited above, supra, ¶ 19, for our holding that there must be substantial compliance with the statutory requirements in effect at the time the road is laid out or the proceedings will be void. Austin, 2009 VT 102, ¶ 7. The trial court here might have been able to infer from the evidence before it that the selectboard took steps to lay out the western segment of Petty Road as a public way, but it had no basis to determine whether the selectboard substantially complied with the statutes in doing so. We have a long line of cases that consider a selectboard's compliance with the statutory requirements in laying out and opening a public highway. Many of these decisions find no statutory compliance, and Austin is one such example. We enforce Austin and its progeny by holding that statutory compliance cannot be

13

proved unless the proponent introduces the necessary records as filed in the town office or proves that the records once existed and complied with the statute.

¶ 30.    This leads us to the trial court's second rationale, that the discontinuance of Petty Road in 1842, followed a few months later by its reestablishment, proved that it was properly laid out over its entire length. This rationale actually has two parts: (1) the discontinuance of the entire length of Petty Road, including both segments, demonstrates that the selectboard must have laid out the western segment of Petty Road sometime prior to its discontinuance, and (2) the reestablishment complies with the statutory requirement of a recorded survey. As we explain below, we cannot agree with either part of the rationale.[9]

¶ 31.    The first part of the rationale—that the discontinuance of the entire length of Petty Road demonstrates that it had been laid out as a public highway in the first instance—is inconsistent with our holding above on the use of circumstantial evidence. We explicitly addressed this issue in <u>Bacon</u> in response to this very same argument made by the plaintiffs there. In <u>Bacon</u>, we gave "no force" to the argument that the official act of the selectboard in discontinuing the disputed highway in 1908 was evidence that the road had been laid out properly in 1863, stating that "since there was no public highway to discontinue, this ostensible discontinuance had no force as a recognition of the highway." 83 Vt. at 436, 76 A. at 135.

¶ 32.    The second part of the rationale addresses the statutory requirement that there be a recorded survey of the road. The language in the 1843 record of Petty Road's reestablishment clearly states that the selectboard is laying out the road. It does not, however, address the requirement of a recorded survey. In fact, it states that the road was reestablished "along a survey of the old road discontinued on the 16th of November last." Plaintiffs presented to the trial court evidence of only one survey, and this survey included only the eastern segment of

---

    [9]    Because of our disposition, we need not address defendants' argument that the trial court erred in finding that present-day Gowing Road, which marks the western terminus of Petty Road, is the Mason Road referred to in the historical documents.

14

Petty Road. No new survey accompanied the reestablishment of the road. The court noted that a preexisting survey could be referenced to comply with the statute, see Winooski Lumber & Water Power. Co. v. Town of Colchester, 57 Vt. 538, 541, 1885 WL 4983, at *1 (noting that statutory requirement to record survey when laying out highway may be complied with "by reference to and adoption of a recorded survey"), overruled on other grounds by Demers v. City of Montpelier, 120 Vt. 380, 386 141 A.2d 676. 680 (1958), but there was no actual survey to reference. We cannot use incorporation by reference to infer the existence of a survey when that survey is in doubt. See Hall v. City of Manchester, 39 N.H. 295, 1859 WL 3798, at *3 (discussing usefulness of incorporating by reference description of street when such description aids in determining boundaries of street otherwise properly laid out).

¶ 33. The trial court also addressed the absence of a survey covering the western segment of Petty Road in its third rationale, that the requirements for laying out and opening a new road do not apply because the selectboard was extending an existing road, not creating a new one. To show that the selectboard could extend an existing road, the trial court relied on 19 V.S.A. § 32, which provides:

> A roadway width of one and one half rods on each side of the center of the existing traveled way can be assumed and controlled for highway purposes whenever the original survey was not properly recorded, or the records preserved, or if the terminations and boundaries cannot be determined.

The statute reflects a legislative recognition that surveys may be unrecorded or lost and that the termination points as surveyed may become impossible to determine. Beyond that, the statute is irrelevant here. Its subject is actually the determination of the width of a road, rather than its length.[10] The termination points of Petty Road can be determined in the survey of the eastern

---

[10] The trial court noted that 19 V.S.A. § 32 had been used in Town of Ludlow v. Watson, 153 Vt. 437, 571 A.2d 67 (1990), a case in which a surveyed road had become 1452 feet longer than shown on the survey. That fact, which appears in the statement of facts in the decision, is irrelevant to the decision, which, like the statute, addressed only the width of the road. The

segment. There is no support in our decisions or in the relevant statutes for the proposition that the length of a road can be extended through the statutory process without a survey of the extended segment.

¶ 34. For the above reasons, we conclude that the trial court erred in concluding that the western segment of Petty Road was established as a public highway by statutory condemnation. We now proceed to determine if a public highway was established under the common law.

## II. Dedication and Acceptance

¶ 35. We next consider whether the common-law doctrine of dedication and acceptance, which is "the setting apart of land for public use," Okemo Mountain, 164 Vt. at 454, 671 A.2d at 1269, supports the trial court's conclusion. A valid common-law dedication and acceptance requires proof of intent to dedicate on behalf of the landowner and proof of acceptance on behalf of the town. Town of South Hero v. Wood, 2006 VT 28, ¶ 10, 179 Vt. 417, 898 A.2d 756. An intent to dedicate and accept may be express or implied, Newton, 115 Vt. at 43, 50 A.2d at 608, but such intent must be unequivocal, Gore, 96 Vt. at 239, 118 A. at 890. Dedication may be shown by "the owner's writings, affirmative acts, acquiescence in public use, or some combination thereof, so long as the owner's intent to dedicate clearly appears." Town of Newfane v. Walker, 161 Vt. 222, 225, 637 A.2d 1074, 1076 (1993) (quotation omitted). While intent to accept may be similarly demonstrated, this intent must also be coupled with some affirmative act of acceptance on behalf of the town. Smith v. Town of Derby, 170 Vt. 553, 554, 742 A.2d 757, 759 (1999) (mem.); Folsom v. Town of Underhill, 36 Vt. 580, 587, 1864 WL 1494, at *1 ("The clearest or most unequivocal act of dedication would be wholly ineffectual without an acceptance of the dedication by the town, acting through its proper officers."). No lapse of time or evidence of long use by the public is required if the acts of dedication and

statute is "an evidentiary method of providing boundaries of a public highway otherwise incapable of ascertainment from public records." Id. at 440, 571 A.2d at 69 (quotation omitted).

16

acceptance are unequivocal. <u>Newton</u>, 115 Vt. at 44, 50 A.2d at 609; <u>Bennington Cnty. v. Town of Manchester</u>, 87 Vt. 555, 557, 90 A. 502, 503 (1914).

¶ 36.    With this background in mind, we turn to the trial court's conclusion with respect to dedication and acceptance. As noted above, it is unclear precisely what common-law doctrine the court applied: dedication and acceptance or prescription. In its ruling on the parties' cross-motions for summary judgment, the court stated that long continuous use by the public would support a finding that a public highway exists through "dedication and acquiescence." In its conclusions of law, the court emphasized "the necessity of acknowledging a continuing right to use a way over which the public use had regularly occurred without objection," and cited two cases, <u>Morse v. Ranno</u>, 32 Vt. 600, 1860 WL 3117, and <u>Higgins v. Ringwig</u>, 128 Vt. 534, 267 A.2d 654 (1970), to support its conclusion that Petty Road "remains a public way by long acquiescence."[11] While there is at least a strong inference that the court was applying the law of dedication and acceptance, it failed to clearly articulate the law or supply any reasoning for reaching its conclusion. Rather, it summarily concluded that the highway has been established through long acquiescence to public use. Additionally, the court's findings, as far as they go, do not support its conclusion.

¶ 37.    On this point, we repeatedly have emphasized that public use alone, no matter how long, is insufficient to create a valid dedication and acceptance. See, e.g., <u>Gardner v. Ludlow</u>, 135 Vt. 87, 90, 369 A.2d 1382, 1384 (1977) (stating that "public usage and repair" are

---

[11]    Neither case the trial court cited supports its conclusion, although one of the two cases presents a vague picture of the distinction between dedication and acceptance and prescriptive easements. In <u>Morse</u>, finding no intent on the part of the landowner to dedicate, we concluded that "there is nothing but use by the public as a highway for travel and mere silent acquiescence, or rather, mere omission to resist such use by the [landowner]. . . . The right of the public, therefore stands upon . . . adverse possession." 32 Vt. at 607, 1860 WL 3117, at *1. As a consequence, it appears that the court conflated the two doctrines in drawing its conclusion. <u>Higgins</u> appears to be a dispute between two landowners over the use of a private road; nothing in it addresses the actions necessary to establish a public highway or continue its use as a public highway.

insufficient to establish public highway); Demers, 120 Vt. at 385, 141 A.2d at 680-81 ("[N]either the dedication of the property nor the use by members of the public, generally, will transfer private property rights and liabilities into the public domain."); Hyde, 27 Vt. at 454-55, 1855 WL 2490, at *8 (citing cases for proposition that public use alone is insufficient to establish public highway).

¶ 38.    As we stressed in Bacon v. Boston & Maine Railroad, "[t]he adoption of a dedicated way as a highway must be evidenced by acts of the proper town authorities, and mere use by the public is not enough."  83 Vt. at 439, 76 A. at 136.  We further explained that a town "cannot have forced upon it as highways whatever ways and paths individuals may open and lay out," id., and that "[i]t is for the towns to determine what shall be highways," id. at 440, 76 A. at 136.  As such, our case law consistently has required some evidence that the town has assumed the responsibility of maintenance and repair of the highway or otherwise has exercised control over the highway.  See Smith, 170 Vt. at 554-55, 742 A.2d at 759 ("The intent to accept 'may be inferred from evidence of assuming the burden of maintaining the road.' " (quoting Okemo Mountain, 164 Vt. at 455, 671 A.2d at 1269)); Town of Woodstock v. Cleveland, 125 Vt. 510, 512, 218 A.2d 691, 693 (1966) (concluding that because town "voluntarily assumed the burden of maintaining the road and keeping it in repair, summer and winter, over many consecutive years," the town has recognized and accepted "the public character of the road"); Way v. Fellows, 91 Vt. 326, 329, 100 A. 682, 684 (1917) (recognizing that "under our system there cannot be a public highway without obligation to repair; and as the town has, in general, the burden of repair, it is for the town to determine what shall be highways therein").

¶ 39.    Plaintiffs' case fails the acceptance requirement.  Plaintiffs contend that the deed references that demonstrate long recognition of public use by the predecessors-in-interest support an intent to dedicate and accept Petty Road.  While such long acquiescence to public use may adequately support an intent on the part of the landowners to dedicate Petty Road to public use,

18

the above-cited cases demonstrate that it is insufficient to prove acceptance by the town. Plaintiffs further argue that the stone walls and other evidence on the ground indicate maintenance and repair of the road. The evidence was sparse on these points and consistent with use as a private road as well as use as a public highway. There was no evidence that the town, as opposed to private landowners abutting the road, provided any improvements, maintenance, or repair. The evidence does not prove unequivocal intent to accept. We therefore conclude as a matter of law that the western segment of Petty Road was not established as a public highway through common-law dedication and acceptance.

### III. Prescriptive Easement

¶ 40. As we stated above, there may be a third possible way of establishing a public highway—that is, by proving that the public had acquired a prescriptive easement over the road. Aspects of the trial court decision suggest that the court relied upon this theory. In general, a prescriptive easement may be established by a showing that the use was "open, notorious, continuous for fifteen years, and hostile or under claim of right," Schonbek v. Chase, 2010 VT 91, ¶ 8, 189 Vt. 79, 14 A.3d 948 (quotation omitted), essentially the same elements as adverse possession. The main difference between the doctrines of adverse possession and prescription is "in the interest claimed." Cmty. Feed Store v. Ne. Culvert Corp., 151 Vt. 152, 156, 559 A.2d 1068, 1070 (1989) (noting that prescription applies to nonfee interests, while adverse possession applies to fee interests).

¶ 41. Many jurisdictions have recognized prescription as a method of establishing a public highway, although prescriptive rights are not favored, and many jurisdictions require a higher standard of proof than preponderance of the evidence. See 10A McQuillin, The Law of Municipal Corporations § 30:21 (3d ed. 2015); see also Brown v. Gobble, 474 S.E.2d 489, 493-94 (W. Va. 1996) (majority view requires clear and convincing evidence). While we have

recognized the existence of the doctrine, at least in other jurisdictions, our precedents are generally hostile to its use in Vermont.

¶ 42.    Our earliest significant precedent on the issue is Gore v. Blanchard, which presents facts somewhat similar to those at issue here.  In Gore, the plaintiffs had been using a road to cross the defendant's property to harvest ice from the river.  When the defendant blocked access, the plaintiffs sued to reestablish public usage, relying on the dual theories of dedication and acceptance and prescriptive easement.  We first held that the plaintiffs had not proved dedication and acceptance and then considered the prescriptive easement claim.  We noted at the outset that "[i]nasmuch as the public cannot take by grant, prescription, which presupposes a grant, in its strict sense, seems to have no application to highways."  Gore, 96 Vt. at 241, 118 A. at 891.  We went on to analyze the doctrine as applied to the facts—"assuming that a prescriptive right in the public can be thus acquired,"—but ultimately concluded that no right was established.  Id.  Our statement above that prescription has no application to highways is, at least, a tentative holding, and because we concluded that a prescriptive easement was not established on the facts before us, we never expressly endorsed the doctrine's application to highways.

¶ 43.    The issue next arose in Town of Springfield v. Newton, where the parties again asked this Court to consider whether the road at issue had been made public by either dedication or acceptance or prescriptive easement.  We first stated the general rule that a public highway could be "established either by regular statutory proceedings, or by dedication and acceptance."  Newton, 115 Vt. at 43, 50 A.2d at 608.  We then added that the early case of Hyde v. Town of Jamaica seemed to recognize prescriptive easements as applied to roads, id. (citing Hyde, 27 Vt. at 455-56, 1855 WL 2490, at *7), but went on to quote Gore, as we did above, id.  Thereafter, the Newton decision analyzed only the dedication and acceptance theory in reaching its result.  Id. at 43-45, 50 A.2d at 608-09.  Following Newton, our cases have stated only two ways of establishing a public highway—statutory condemnation and dedication and acceptance—and

20

never again have mentioned prescriptive easement. See <u>Cersosimo v. Town of Townshend</u>, 139 Vt. 594, 595, 431 A.2d 496, 497 (1981) ("Under Vermont law there are two methods of laying out public roads: statutory condemnation, and dedication and acceptance."); <u>Town of Woodstock</u>, 125 Vt. at 512, 218 A.2d at 693 ("Apart from statutory provisions, a public way may be established by dedication and acceptance"); <u>Demers</u>, 120 Vt. at 384, 141 A.2d at 679 ("A public way is established by statutory condemnation or by dedication and acceptance"). Any dicta in <u>Gore</u> to the contrary notwithstanding, we conclude that the state of our law is that a nonpublic road cannot become public through a prescriptive easement, and we therefore cannot uphold the trial court's decision based on the theory of prescriptive easement.

¶ 44. As we have concluded that Petty Road was not established as a public highway by statutory condemnation or common-law dedication and acceptance, and that it could not be established by prescriptive easement, we hold that plaintiffs failed to demonstrate that the disputed western segment of Petty Road is a public highway.

<u>The injunction is vacated, and the judgment is reversed</u>.

FOR THE COURT:

_____

Associate Justice

21