Filed 09/04/24

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00221

Peter Doran et al v. Town of West Haven et al

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This case involves a dispute over River Road in West Haven, Vermont. The matter came before the court on a two-day bench trial, on June 24 and 25 of 2024, on the sole issue of whether the portion of River Road known as Upper River Road is a public highway. Plaintiffs Peter and Greta Doran were represented by Attorneys Antonietta Dutil and Rodney McPhee. Defendant Christopher Sheldrick, both individually and as executor to the estate of Raymond Bishop, was represented by Attorneys Peter Langrock and John Brady. Defendant Town of West Haven was excused from the bench trial. Based upon the credible evidence presented at trial, and upon review of the parties' post-trial briefs, the court makes the following findings of fact and conclusions of law by a preponderance of the evidence.

## Findings of Fact

As a preliminary matter, the court's prior ruling on summary judgment was admitted without objection as Exhibit 34. As such, the court adopts all facts that were identified as undisputed in that ruling, as findings of fact for purposes of the bench trial. As noted in the decision on summary judgment, River Road is a gravel surfaced road in the Town of West Haven. River Road runs between Main Road and Hackadam Road and is commonly identified by two sections: Lower River Road and Upper River Road. Lower River Road begins at an its intersection with Main Road, and runs southwesterly, and roughly parallel with the Hubbardton River, until it veers northward for a short distance before making a tight U-turn. Upper River Road begins at the apex of the U-turn, and runs near due south, until it ends, at its intersection with Hackadam Road. The private parties to this action—that is, the Plaintiffs, Mr. Sheldrick, and the estate of Mr. Bishop—each own a parcel of real property that abuts and underlies a portion of what is known as Upper River Road.

As noted in the court's decision on summary judgment, Upper River Road was surveyed in 1785 when the land was within the boundaries of the Town of Fairhaven. The survey was recorded in the land records, but failed to specify the width or breadth of the roadway that it purported to lay out. This was not the only public roadway the town purported to lay out at this same time by a recorded survey that described a roadway's location, distance, and course but which failed to specify its width or breadth.

In the court's ruling of August 31, 2023, the court found and declared that Lower River Road was a public highway via statutory condemnation. In that regard, the court relied upon

a road survey, recorded on March 7, 1808, in the land records of the Town of West Haven (after it had been organized as a separate town), specifying the location, course, distance, and width, of a road that is now known as Lower River Road.

Thomas Fucile is a resident of West Haven, and has lived at 910 Hackadam Road, a quarter mile from River Road, since 1976. He has served as the fire chief since 1989 and served on the town selectboard for thirteen years in the 1980's and 90's. As part of his duties, Mr. Fucile would drive every Class 2 and Class 3 town roads annually. Upper River Road was included in this annual survey. During Mr. Fucile's tenure on the selectboard, Upper River Road was maintained by the Town of West Haven as a public highway. The town received stated aid for its maintenance and used public funds to maintain Upper River Road. The town graded Upper River Road annually, added gravel as required, and placed salt or sand on the road during the winters. In addition, the town made any necessary repairs to the road.

When Mr. Fucile moved to West Haven in 1976, there were no houses on Upper River Road. Over the years, some houses were built, including the Doran's. Upper River Road was utilized by the public, including trucking gravel out of a gravel pit located on Lower River Road. When E-911 came to Vermont, Mr. Fucile became the 911 Coordinator and assigned every resident a 911 number to display on mailboxes at the end of driveways. E-911 numbers were assigned to residents of Upper River Road.

Defendant Sheldrick's parcel, and the parcel belonging to the estate of Raymond Bishop, did not exist until the 1980s. In 1998, Raymond Bishop submitted an application to subdivide his property. Ex. 54. As part of that application, Mr. Bishop submitted a survey map. Ex. 55. The application references River Road and does not purport to identify it as anything but a public road. This is consistent with the survey completed by Timothy Short and recorded in the West Haven land records in 1997. Ex. 56. This is also consistent with Mr. Bishop's deed, which describes the land covered by the deed "to the Bishop Falls Road." Ex. 22. Bishop Falls Road is another name used for River Road. Multiple surveys and maps of River Road throughout the years have depicted the road as a public highway. *See e.g.* Exs. 4, 24, 25, 26, 27, 28, 29, 30, 32. Mr. Sheldrick and the estate of Mr. Bishop both have mailboxes at the ends of their driveways on Upper River Road and receive mail from the Postal Service there.

Robert Ellis was the road commissioner for the Town of West Have for over twenty-one years. Mr. Ellis retired ten years ago. As road commissioner, Mr. Ellis was responsible for all of the town's road work. This included resurfacing, batching, cutting brush, and repairs. State and local public funds were utilized for the performance of this road work. Upper River Road was always considered a public road and was included in the town's maintenance and repair schedules. Public funds were utilized to maintain and repair Upper River Road.

Peter Doran has resided in West Haven for sixty-seven years and lives on Main Road. Mr. Doran owns property on Upper River Road. During his lifetime, Upper River Road was utilized by the community. People would drive on it, bike on it, and otherwise use it as a public road daily. Mr. Doran previously served on the selectboard in 2010 through 2012. The town maintained River road by grading, gravelling, and ditching the road. Historically, the town would have to repair Upper River Road due to yearly washouts. In 2009, the Town attempted to obtain a federal grant for road improvements that would have covered Upper River Road. Ex. 52.

Mr. Doran's daughter, Greta Doran, lives and owns property on an adjacent lot Upper River Road. Ms. Doran has resided in West Haven for thirty-four years of her life. Ms. Doran served on the selectboard in 2013 and 2014. Public funds were utilized to maintain and repair Upper River Road during this time. During her childhood, teenagers would frequently drive on Upper River Road to galivant. During her life, Ms. Doran has observed the following individuals use Upper River Road: townspeople, residents, dump trucks, farmers, Postal Service workers, UPS and FedEx drivers, fuel delivery drivers, and town trucks. Ms. Doran receives mail at her address at 900 River Road. In addition, the postal service delivers to five other residents on River Road.

## Conclusions of Law

There are two methods by which a public road or highway over privately-held lands may be established: statutory condemnation, or common-law dedication and acceptance. *See Kirkland v. Kolodziej*, 2015 VT 90, ¶ 43, 199 Vt. 606; 19 V.S.A. § 1(12). The Court concludes, based on the application of the law to the facts found, that River Road was established as public road by way of dedication and acceptance. The Court does not address whether the Road was, alternatively, established as a public road through statutory condemnation.

According to our Supreme Court:

a long acquiescence in use[] by the public, if the attending circumstances are such as clearly to indicate an intent by the owner to devote the land *to public use as a highway*, is evidence upon which a dedication may be predicated. The allowance by the owner of repairs at public expense is a circumstance strongly tending to show such an intention.

*Town of Springfield v. Newton*, 115 Vt. 39, 44 (1947) (emphasis added).

The record here shows that there was long acquiescence in the use of Upper River Road by the public in common as of right, and without any abutting or affected landowners' permission. For example, Plaintiff Greta Doran personally observed, across her lifetime, that Upper River Road was regularly used by town residents, dump trucks, farmers, Postal Service workers, commercial carriers (UPS, FedEx, etc.), fuel delivery drivers, and town trucks. She also receives her mail by U.S. Postal Service delivery to her residential address (900 River Road) and observed that mail was also delivered to other residents on Upper River Road. The record also showed that Mr. Sheldrick and Mr. Bishop (prior to his death in late 2022) had mailboxes on the Road and received their mail there.[1]

Peter Doran, a West Haven resident for over 60 years, testified that Upper River Road has been utilized by the community at large during his lifetime. This includes regular, daily use by automobile drivers, as well as bicyclists. Additionally, Mr. Fucile explained that members of the public traveled Upper River Road in order to obtain and haul gravel out of a gravel pit located on Lower River Road. Further, there was no evidence from Defendants showing that, until the more recent disputes about the Road's

---

[1] Defendants submitted no briefing disputing Plaintiffs' contentions, made in post-trial briefs and in briefs supporting their motion for summary judgment, that use of a road by public mail carriers is evidence of dedication of the road to public use.

status, they or any other adjoining landowners on Upper River Road limited public usage of the Road, or allowed access to it only by permission.

The residents of Upper River Road were also each assigned E-911 numbers under Mr. Fucile's tenure as the Town's 911 Commissioner. The assignment of these numbers, with instructions to the residents to post the numbers visibly from the Road, is evidence that the residents received notice that the roadway would be open and maintained for use by public emergency service vehicles (e.g., fire trucks, ambulances, and the like). It is evidence of the residents' knowledge of the Road's "public use" character.

The acquiescence by the adjoining landowners to public use of the Road was coupled with their allowance of maintenance and repairs to the Road, performed at public expense. This was confirmed through the testimony by Mr. Fucile, Mr. Ellis, Mr. Doran, and Ms. Doran, who each had knowledge that the road was maintained using public funds. This included work such as snowplowing, salting or sanding, grading, ditching, and brush clearing. Such work, and the fact that it was performed by governmental entities (and not at private expense), would be reasonably obvious to any abutting or servient landowner on Upper River Road.

Based on this evidence alone, in light of the standards set forth in *Newton*, 115 Vt. at 44, the Plaintiffs have proven common-law dedication of Upper River Road as a public road or highway. However, finding of dedication is also supported by deeds containing references to and descriptions of the Road abutting and/or crossing private lands. *See Gardner v. Town of Ludlow*, 135 Vt. 87, 89 (1977) (relying on deeds to show owners' intent to dedicate); *Druke v. Town of Newfane*, 137 Vt. 571, 574-75 (1979); *Town of S. Hero v. Wood*, 2006 VT 28, ¶ 16, 179 Vt. 417; *Okemo Mtn., Inc. v. Town of Ludlow Zoning Bd. of Adjustment*, 164 Vt. 447, 455 (1995). Here, the Bishop and Sheldrick deeds describe the western sides of land parcels conveyed to them as following, in part, the eastern side or edge of "Bishop Falls Road," rather than the edge or course of any private road, private lane, or private right-of-way. Exs. 22-23. And "Bishop Falls Road" had been the name used for what is now known as Upper River Road, on many prior deeds and maps. *See also* Ex. 56 (professional survey recorded in town land records in 1997, of lands later conveyed to Plaintiff Peter Doran, referencing and depicting lands adjoining "Bishop Falls Road also known as River Road"); Ex. 54 (Bishop's 1996 subdivision permit application referring to property "bordered by River Road"). Mr. Bishop and Mr. Sheldrick thus purchased their properties with notice that their lands were encumbered on their western sides by a public road, called "Bishop Falls Road" or "River Road."[2] This supports a finding of an intent to dedicate.

Further, the 2009 deed conveying title from Mr. Doran to Plaintiff Greta Doran referred to the property as bounded on its easterly side by "West Haven Town Highway No. 14, also known as "Bishop Falls Road" or "River Road." Ex. 41. Thus, that deed recognized a pre-existing public roadway, and is thus evidence of Ms. Doran's intent, as servient landowner, to dedicate the road to public use.

Accordingly, therefore, the Court concludes that an intent to dedicate has been shown clearly by the record presented.

---

[2] Mr. Bishop's prior understanding that a portion of his lands were encumbered by Upper River Road is tacitly revealed by his arguments expressing concern that the location of the road be determined, as that will affect the amount of just compensation that he may be due, as a result of the encumbrance.

Moving to the issue of acceptance, the Court also finds sufficient evidence of acceptance of Upper River Road by the Town of West Haven, as a public roadway. For example, Upper River Road was repeatedly included on State Highway Maps as a public highway. Ex. 30. Given that those Maps are derived from periodic, sworn reports made by the Town's selectboard that describe—by mileage, class, condition, and location—all public roads in the Town that are eligible for State highway aid, the Maps are evidence of an intent by the Town to accept the Road as a public road. *See Gardner*, 135 Vt. at 90 (similarly relying on State Highway Map).[3] Acceptance is also shown by testimony of three former selectboard members, who explained that the Town used public funds and resources at different time periods to regularly repair and maintain Upper River Road. Likewise, Mr. Ellis, the former road commissioner, testified as to the work on Upper River Road under his watch. And in 2009, the Town even attempted to obtain a special federal grant for improvements to its roads, including Upper River Road. Such evidence clearly shows the Town's intent to accept the Road as a public road.

Defendants' primary argument on the issue of acceptance is based on *Newton*, a case concerning a town's supposed acceptance of a particular bridge. That bridge had been repaired and maintained for many years at the direction of the town's road commissioner, but there was no record that such work had been authorized in writing by the town's selectboard. *See* 115 Vt. at 45-47. The Supreme Court declined to find an acceptance of the bridge because a state statute provided that any repair of a bridge of this type required written authorization from the town's selectboard, duly recorded in the town clerk's office. *See id.* at 48. Relying on *Newton*, Defendants argue that Plaintiffs failed to prove acceptance because they did not give documentary evidence showing that West Haven's selectboard ever approved the work on Upper River Road. However, Defendants cite no state law requiring recorded, written authorization by a selectboard for road repairs and maintenance generally. Thus, *Newton* is distinguishable. *See Gardner*, 135 Vt. at 90 (distinguishing *Newton* on the same grounds and finding acceptance based on general road maintenance work).

Accordingly, therefore, Plaintiffs proved at trial that Upper River Road has been established as a public road by common-law dedication and acceptance.

Under 19 V.S.A. § 32 and 19 V.S.A. § 702, the width of an existing public highway is presumed to be three rods wide—*i.e.*, one and one-half rods on either side of the road's existing center line. *See Cameron's Run, LLP v. Frohock*, 2010 VT 60, ¶ 13, 188 Vt. 610 (mem.). This presumption holds "absent proof to the contrary," such as a "preserved and properly recorded original survey." *Id.* Additionally, that three-rod presumption applies, where, as here, the location of the traveled way has changed over time (relative to its location as originally surveyed), and/or the Road's boundaries or points of termination cannot be determined from an original survey. *See Town of Ludlow v. Watson*, 153 Vt. 437, 441 (1990).[45]

_____

[3] Prior briefing in this case by the Town and the Plaintiffs showed that the State Highway Maps are a joint product of municipal and State officials, as dictated by statute. *See* Movants' Additional Briefing In Supp. of Mot. for Summ. J. (filed May 15, 2023), at 2-5 (citing 19 V.S.A. § 305 and similar prior statutes). Among other things, this statutory process requires town selectboards to prepare sworn statements describing all of the roadways for which the town is seeking State highway aid.

[4] Plaintiffs and the Town submitted briefing in this case stating that "three-rod presumption from existing center line" should control in the case of Upper River Road. They conceded that the original survey of Upper River Road from 1785 described the Road's location and course by reference to geographic markers or monuments that have long disappeared and cannot be reasonably ascertained today. They also

Here, the original survey for Upper River Road failed to specify its width. No other properly recorded evidence has been presented rebutting the three-rod presumption. Thus, the three-rod presumption controls. However, the issue of the location of the currently existing center line of Upper River Road has been reserved by the parties, until a later stage of this case, and thus, is not adjudicated here.

## **ORDER**

Based on the above findings and conclusions, the Court hereby orders and declares that Upper River Road in the Town of West Haven (as described above) is a public road or highway. The Court further declares that the Road has a width of three rods—one and one-half rods to either side of its currently existing center line. The location of the currently existing center line of Upper River Road remains an issue for later determination.

Electronically signed on September 4, 2024 pursuant to V.R.E.F. 9(d)

*Alexander N. Burke*
_____
Alexander N. Burke
Superior Court Judge

---

observed, based on a surveyor's opinion, that the Road's traveled location has likely shifted a bit over time. These are the circumstances under which the three-rod presumption applies. *See Watson*, 153 Vt. at 441-42.

[5] The evidence supporting the determination dedication and acceptance occurred in this case happened after 19 V.S.A. § 702 was enacted in 1986, thus the presumption applies in this case.